(No. 38488.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* DALE E. OLMSTEAD, Plaintiff in Error.

*Opinion filed March 18, 1965.*

SCHAEFER, J., dissenting.

KENNETH W. TRAWUM, of Rockford, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and WILLIAM R. NASH, State's Attorney, of Rockford, (FRED G. LEACH, Assistant Attorney General, and WILLIAM H. SNIVELY, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

The defendant, Dale Olmstead, was charged with the crime of indecent liberties in the circuit court of Winnebago County. Thereafter the State's Attorney filed in the same case a petition to adjudicate the defendant a sexually dangerous person pursuant to the Sexually Dangerous Persons Act. Ill. Rev. Stat. 1961, chap. 38, pars. 820.01 *et seq.*

The Sexually Dangerous Persons Act was originally enacted in 1938 and is now set out in the Code of Criminal Procedure. (Ill. Rev. Stat. 1963, chap. 38, pars. 105—1 to 105—12.) It provides that when a person is charged with an offense, the Attorney General or the State's Attorney may file a petition in the original criminal proceeding setting forth facts tending to show that the person charged is a sexually dangerous person. If upon a hearing, and after examination by two qualified psychiatrists, the accused is found to be a sexually dangerous person, he must be committed to the custody of the Director of Public Safety until recovered.

The act further provides that proceedings thereunder shall be civil in nature, and that the respondent shall have a right to demand a jury trial and to be represented by counsel.

Section 1 of the Act defines a sexually dangerous person as follows:

"All persons suffering from a mental disorder, which mental disorder has existed for a period of not less than one year, immediately prior to the filing of the petition hereinafter provided for, coupled with criminal propensities to the commission of sex offenses, and who have demonstrated propensities toward acts of sexual assault or acts of sexual molestation of children, are hereby declared sexually dangerous persons."

The defendant waived trial by jury on the petition and was represented by appointed counsel. After a hearing, the

trial judge found defendant to be a sexually dangerous person and entered an order committing him to the custody of the Director of Public Safety pursuant to the act. Thereafter the defendant filed a petition for writ of *habeas corpus* and two petitions for writ of recovery, all of which were dismissed on motion of the State.

Defendant now appeals from the original order of commitment and from the order dismissing his first petition for writ of recovery alleging various deprivations of his constitutional rights. We will first consider the alleged errors on the hearing resulting in the original order of commitment. Defendant claims that he was not properly represented by counsel; that he was not properly advised prior to his waiver of his right to be proceeded against by grand jury indictment; that his confessions were improperly admitted; that his jury waiver was improperly accepted; and that the finding that he was a sexually dangerous person was contrary to the law and the evidence.

Defendant's claim that he was not properly represented by counsel is based upon the failure of appointed counsel to make opening or closing statements, the failure to object to hearsay testimony of a psychiatrist, and the failure to persist in objections to the admission of defendant's confession in evidence. He therefore claims that the utter incompetency of counsel amounted to no representation or reduced the trial to a farce under the rule of *People* v. *De Simone,* 9 Ill.2d 522.

We agree that although these proceedings are called civil in nature, they may result in a deprivation of liberty and a defendant must be accorded the essential protections available in a criminal trial. (*People* v. *Capoldi,* 10 Ill.2d 261.) We have therefore examined the record to determine the adequacy of defendant's representation.

At the outset it appears that trial counsel was selected by defendant's wife, and was appointed by the court when it was disclosed that his family was without funds. The

record indicates that the attorney was well aware of the nature of the proceeding and of his client's rights. He explained his client's right to be indicted by a grand jury; he moved to quash the information and made a motion for a list of witnesses. When the State attempted to introduce defendant's confessions without calling one of the officers present, counsel objected. When he was informed that the officer was out of town and the case would have to be continued, he withdrew his objection. Since there is no suggestion that the confessions were involuntary, we do not consider counsel's concession a mark of incompetency, but rather a courtesy to the court in not requiring proof of an undisputed fact.

In the absence of any objection or assertion by defendant that the confessions were involuntary, it was unnecessary for the State to produce every material witness connected with the taking of the confessions. They were properly admitted in evidence.

One of the examining psychiatrists testified to substantially the same matters contained in his written report. We grant that his testimony contained hearsay statements. However, counsel had access to the written report, and we cannot say that an able lawyer desiring to protect his client's rights could not properly determine that justice could be best served by granting the psychiatrist considerable latitude in presenting his analysis of the defendant.

From the testimony of the psychiatrist, it appears that defendant's counsel suggested defendant be hospitalized "in an appropriate mental institution to receive treatment." Such a suggestion in defendant's case does not indicate incompetency, but on the contrary indicates a sincere desire to solve his client's problems short of a criminal conviction or an order committing him to the Director of Public Safety.

Nor do we believe that the failure to make oral argument before the judge or the failure to introduce evidence indi-

cates that counsel did not adequately represent defendant. From the record before us we find no such abandonment of defendant's rights as appeared in *People* v. *De Simone,* 9 Ill.2d 522. Proper legal representation does not require the manufacturing of a defense when there is none, or the obfuscation of facts. From the entire record in the case we conclude that defendant was afforded adequate representation on the original petition.

The record discloses that defendant was fully advised both by the court and by his counsel as to his right to be proceeded against by grand jury indictment, and it appears that he understandingly waived such right in open court. We also find nothing in the record to indicate that defendant was unable to understand the consequences of his jury waiver, and we must conclude it was understandingly made. (*People* v. *Palmer,* 27 Ill.2d 311.) The statute does not even require a jury waiver, but requires defendant to request a jury in such a proceeding. (Ill. Rev. Stat. 1963, chap. 38, par. 105—5.) Defendant, however, argues that a person accused under the Sexually Dangerous Persons Act is mentally incompetent to stand trial, and certainly is incompetent to waive his right to a trial by jury. With this we do not agree. The test of mental competence at a pretrial hearing is whether the defendant can understand the nature of the charge against him and adequately aid in the preparation of his defense. (*People* v. *Burson,* 11 Ill.2d 360.) A person can be sexually dangerous under the definition in the act, and still be competent to stand trial and waive a jury. The testimony in this case affirmatively indicates defendant had the mental capacity to stand trial and to understandingly waive a jury. We hold that the trial court did not err in failing to impanel a jury to try the issues raised by the petition.

Defendant next complains that the evidence did not support a finding that he was a sexually dangerous person. We have carefully examined the testimony of one of the

examining psychiatrists and the other evidence and find that the evidence is sufficient to establish *prima facie* that defendant was suffering from a mental disorder for a period of more than one year; that he had criminal propensities to the commission of sex offenses; and has demonstrated propensities toward acts of sexual assault or molestation of children. The finding that he was a sexually dangerous person was therefore not contrary to the law and the evidence. Ill. Rev. Stat. 1963, chap. 38, par. 105—1.01.

The statute provides that two qualified psychiatrists shall be appointed to examine the defendant. This was done, and their reports filed in the cause. Both reports support the finding of the trial court and are a part of the court record. We find no requirement in the act that both psychiatrists shall testify, and we feel that the testimony of one may provide a *prima facie* case in the absence of contradictory reports. It is our determination that the trial court did not err in finding defendant to be a sexually dangerous person.

We must next consider defendant's claim that the trial court erred in striking and dismissing his first application for discharge, and in failing to appoint counsel and grant defendant a jury trial. This petition demanded a trial by jury, set forth the indigency of the petitioner and requested the appointment of counsel. At the time of the first application section 9 (par. 105—9) of the act provided: "An application in writing setting forth facts showing that such sexually dangerous person or criminal sexual psychopathic person has recovered may be filed before the committing court. The court shall set a date for the hearing upon such application. If the patient is found to have recovered the court shall order that he be discharged." Section 5 of the act (par. 105—5) provided that "The respondent in any proceedings under this Act shall have the right to demand a trial by jury and to be represented by counsel."

We must first consider if section 5 applies to applica-

tions for discharge under the act. As we read the statute there are only two proceedings under the act. The first is the petition to adjudicate the defendant a sexually dangerous person. If he is so adjudicated, he is committed to the Director of Public Safety for an indeterminate time "until the person has recovered and is released" as provided in the act.

The only other proceeding that the statute contemplates is the application for discharge under section 9. Both proceedings involve the paramount factual issue of the mental condition of the defendant; both involve his liberty. One proceeding may deprive him of his liberty; the other is his statutory method of regaining his liberty. We believe that the legislature, when it referred to "any proceeding under this Act," in section 5, intended the right to counsel and a jury trial to apply to both the original petition proceedings and the application for discharge.

The State argues, however, since the application of defendant was dismissed on motion before issues were joined, there was no need for a hearing, the appointment of counsel or the impanelling of a jury. We have therefore examined defendant's first application under section 9, which he has entitled "Petition for Recovery." It is a prolix document, containing much immaterial matter and many highly debatable "propositions of law." However, the document filed by defendant alleged that he had been confined from October 10, 1961, to December, 1962, and that since his commitment he had complied with the rules and regulations for inmates, that he had displayed a willing and respectful attitude of co-operation in submitting to therapy, that he had made efforts for work improvements and progressed to responsible levels, that he had continued his education while confined, that he has corrected and learned to control his unwanted desires that led to his commitment and that he is fully capable of resuming his position in society.

The State moved to strike the petition on the ground

that it did not state sufficient facts or circumstances to indicate that petitioner had recovered and that the allegations were self serving conclusions of the petitioner. The trial court granted the motion to strike and dismiss upon these grounds.

While the statute requires that the application for discharge set forth facts showing that the sexually dangerous person has recovered, we find it difficult to conceive any more precise statement of recovery in the absence of assistance by counsel. We feel that this application, despite its rambling. and artless form, meets the requirements of section 9 of the act and requires a hearing thereon.

Under this act the defendant has been indeterminately committed to the Director of Public Safety. The only statutory route to freedom from confinement is to establish his recovery under section 9. It is inconceivable that such sole right should find a road block in the fact that the indigent defendant is inarticulate in the forms of law or that he does not have the affidavits of psychiatric specialists to support his application.

It is our conclusion that, upon the filing of defendant's application for discharge under section 9, the trial court should have appointed counsel to represent this indigent defendant and should have impaneled a jury pursuant to defendant's jury demand, and held a hearing to determine if the defendant had recovered from the disability responsible for his original commitment. To hold otherwise would be to permit the State to forever hold in confinement a defendant found to be sexually dangerous at the sole discretion of the officers of the State. The rights of the individual, as protected by the provisions of this act, do not so intend.

We therefore affirm the original order of the trial court committing the defendant under the provisions of the Sexually Dangerous Persons Act but reverse the judgment of the trial court striking and dismissing the defendant's first application for discharge under section 9 of said act, with

directions to appoint counsel to represent the indigent defendant in said proceedings and to proceed in accordance with the views expressed in this opinion.

*Affirmed in part and reversed in part and remanded, with directions.*

Mr. JUSTICE SCHAEFER dissenting:

The proceedings under the Sexually Dangerous Persons Act sufficiently partake of the characteristics of a criminal prosecution that the defendant must be accorded his constitutional right to confront the witnesses against him. (See, *People* v. *Nastasio,* 19 Ill.2d 524.) That right was denied to the defendant in this case, and I think that the judgment committing him to custody as a sexually dangerous person should therefore be reversed.

The statute requires that two qualified psychiatrists be appointed to examine the alleged sexually dangerous person. Their reports are to be filed with the court. (Ill. Rev. Stat. 1961, chap. 38, par. 823.) In this case two psychiatrists were appointed and filed their reports. Only one of them testified. The other was not immediately available, and the Assistant State's Attorney suggested that he would return to the city the following day. The trial judge, however, stated: "Well, you can rest without him. Let the record show that the People rest." This action of the trial court in my opinion violated the constitutional right of the defendant to confront the witnesses against him, and the judgment must be set aside.

The error is not cured by the fact that the report of the second psychiatrist, who was not called as a witness, was filed with the trial judge and "is a part of the court record." It is the fact that the unsworn and untested report of that psychiatrist is an essential part of the record that causes the error.