**People of the State of Illinois, Plaintiff-Defendant in Error, v. Lawrence Phillip Dean Pygott, Sr., Defendant-Plaintiff in Error.**

**Gen. No. 10,578.**

Fourth District.

November 9, 1965.

 

 
 

W. A. Sappington, of Decatur, for plaintiff in error.

Basil G. Greanias, State's Attorney of Decatur, for defendant in error.

SMITH, P. J.

Defendant appeals from an order committing him to the custody of the Director of Public Safety as a sexually dangerous person. We summarize the proceedings complained of.

On November 4, 1963, defendant was arraigned on an information charging· the taking of indecent liberties · with a minor child. A copy of an alleged confession was served on him and the Public Defender appointed to represent him. So that they might confer, the arraignment was continued. At the continued hearing, six weeks later, December 23, indictment was waived, and through his counsel, defendant proffered a plea of guilty. Such proffer was resisted by the Assistant State's Attorney, who said that his office had letters from two psychiatrists indicating that defendant was a sexually dangerous person, and asked that the matter be continued to determine the advisability of filing a petition to "have this person declared an S.D.P." The precise problem, so it appears, was whether, from the point of view of treatment, defendant would be better off under a commitment as a sexually dangerous person, rather than on a conviction of the charges stated in the information. Defendant's counsel retorted:

"[T]hat the defendant has made confession and states that he is guilty of the crime as charged in Count 1 of the indictment, and that it is his desire to plead and it is my understanding that since he would not be asking for probation but would be sentenced, that going through the diagnostic portion of his incarceration early in the incarceration, that if psychiatric help is needed it would be furnished to him, and I take the viewpoint that by his pleading at this time here he is able to cooperate with counsel and knows right from wrong that it is much better that he do it in this way and while he is serving his time and paying his debt to society he would be receiving the psychiatric treatment rather than have him committed under a commitment and have him come back at a time later than this and then have to dispose of his plea."

The court wondered out loud whether defendant had the right to insist upon entering a plea, and continued the matter to find out, entertaining the views of both counsel in the meantime. At the adjourned hearing on December 27, the problem became academic, because a plea of not guilty was entered, followed by the filing of a petition to have defendant declared a sexually dangerous person. The court thereupon appointed two psychiatrists to make examination and to file their reports. Next, a stipulation was filed which we will detail later on. It was signed by the State's Attorney and defendant's counsel. The court then inquired if the record could show the reports of the two psychiatrists on file, to which counsel answered: "The record may so show," at the same time acknowledging receipt. "[T]he next matter to be touched upon," the Assistant State's Attorney said, "would be an admission or denial of the material allegations of the petition by the defendant." These were therefore gone into. Paragraph 1 related to defendant's

conviction for contributing to the delinquency of a minor in 1951; Paragraph 2, a conviction for the same in 1954; Paragraph 3, the subject matter of Count 1 of the information—indecent liberties. Each of these paragraphs was read to defendant by his counsel, and he acknowledged their correctness, changing one date, and qualifying his admission as to Paragraph 3, by stating that he didn't know what he was doing, up to a point, and after that, "I didn't continue." Apropos of the fourth and concluding paragraph, contributing to the delinquency of a child in 1962, counsel advised that they would make no statement. Defendant, upon inquiry as to his "feeling about this matter," advised the court that the Paragraph 3 act was committed while he was more or less asleep, but as soon as he came to, he quit. About a year later, he continued, he told his wife about the incident; that she left him; that he thereupon went to the police station for help, where, "They asked me questions. I gave them answers."

The questioning at the police station, as might be surmised, was transcribed and turned up as the "confession," and now became people's exhibit No. 1. Counsel stipulated that it was voluntary, and that he had "no objections" to its admission into evidence. Defendant was advised as to his right to a jury trial, and the court inquired specifically: "Do you want a jury trial in this matter, Mr. Pygott?," to which defendant responded, "No, Sir," with counsel adding, "Defendant waives his right to a trial by jury in this cause." By letter, the State's Attorney obligated himself not to prosecute defendant, "[I]f and when the defendant is declared cured by psychiatrists," and such became a part of the record, a result which the statute itself requires. Ill Rev Stats 1963, c 38, ¶ 105.9.

The stipulation, previously alluded to, provided the psychiatric reports made to the State's Attorney's office prior to the filing of the petition, "may be filed in this

cause and stand in lieu of the psychiatric examination and report in writing thereof as required by the aforesaid order of this Court"; that if the psychiatrists were called as witnesses, they would testify as to the same matters as set forth in the report; that such could be submitted as evidence; and that they would further testify:

> "[T]hat it is their opinion, based upon a reasonable degree of medical certainty that the said [defendant] is a person suffering from a mental disorder, which mental disorder has existed for a period of not less than one year immediately prior to the filing on December 27, 1963, of the aforesaid petition to have said [defendant] declared a sexually dangerous person and that said mental disorder is coupled with criminal propensities to the commission of sex offenses and that the said [defendant] has demonstrated propensities towards acts of sexual molestation of children and is, therefore, a sexually dangerous person."

This is almost a verbatim recital of the statutory definition of sexually dangerous, and one might wonder after so stipulating, what a defendant might urge for reversal of an order finding him to be just that.

■■■■ His first contention is that the statute was not strictly adhered to, pointing out that the examination and reports, predated the filing of the petition. This is, of course, true. Section 4 of the Act (§ 105–4, c 38, Ill Rev Stats 1963) reads:

> "After the filing of the petition, the court shall appoint two qualified psychiatrists to make a personal examination of such alleged sexually dangerous person, to ascertain whether such person is sexually dangerous, and the psychiatrists shall file with the court a report in writing of the result of their examination, a copy of which shall be delivered to the respondent."

289

It is obvious that the requirements as to examination were not strictly adhered to, but the real question is, can such requirements be waived, and if so, were they waived here? Answering the last question first, the stipulation, as we have seen, contains an explicit waiver. As to the other question, we conclude that these requirements can properly be waived. People v. Bruckman, 33 Ill2d 146, 210 NE2d 537. The stipulation says that if the psychiatrists had been called on the day of the hearing, "they would testify to the same facts and opinions as set forth in their respective written reports aforesaid." It seems somewhat of a waste of time to insist that a re-examination be had for the purpose of redating the reports to satisfy the time sequence called for in the statute. As to his complaint that he did not receive a copy of the reports, it is answer enough that the record shows his counsel did. We have never understood that counsel could not answer for his client, at least as to perfunctory matters relating to service. We agree with defendant that the statute should be strictly construed. People v. Capoldi, 10 Ill2d 261, 139 NE2d 776. That we will so construe it, does not mean that we will not permit a defendant to waive a time sequence, or that delivery of the reports must be to him personally and not to counsel.

 His next contention is that there was no preliminary proof of the voluntariness of the "confession," nor of the corpus delicti—"of the incidents described in the statement." Again, the record belies this assertion. The "confession" was admitted into evidence, specifically, as we have seen, without objection. What is more, its voluntary nature was the subject matter of an oral stipulation. The argument that there is no proof of the corpus delicti eludes us. The People were not required to establish the corpus delicti of the crime described therein. The hearing pertained, one might say, to a determination of "status," not as to guilt or innocence of the act described

in the statement, or indeed, of the charges set forth in the information.

 A more serious question is presented by the contention that there was no proof that defendant was suffering from a mental disorder that had existed, as the statute requires, "for a period of not less than one year immediately prior to the filing of the petition." But as we have seen, the stipulation specifically covers this precondition. It is true, that the stipulation casts this element in conclusionary language, indeed in the language of the statute, but, in effect, it is defendant's conclusion, and these conclusions certainly could have been testified to by expert witnesses, as the psychiatrists were. It is defendant's fault and no one else's that the conclusion was not tested in the usual mode by cross-examination. The stipulation is enough, in our opinion, to satisfy this alleged lack of proof. It is certainly not hearsay, as he contends, for one may stipulate as to what witnesses, if called, would testify to.

 His final contention is that he was not adequately admonished as to the consequence of waiving a jury. The court advised him of such right, and both he and his counsel said they didn't want one. This is indeed enough in this situation.

 The stipulation, standing alone, covered all the preconditions necessary to finding that the defendant was a sexually dangerous person. The other matters furnished ample corroboration. No question is raised as to the propriety of this all-inclusive stipulation, and we know of none. Stipulations of fact, are common occurrences, and are, for obvious reasons, much favored by courts. The cases cited to us, where apt, relate to matters engendered in contest and are not especially relevant to this appeal. Here for all intents and purposes, the defendant joined in the petition. Even so, the court was extremely careful in coming to the conclusion that it did.

There were three separate hearings, extending over a period of six weeks, and it is difficult for us to characterize the entire proceeding as other than orderly and deliberate. Furthermore, one overriding circumstance must be kept in mind—that the defendant was represented by counsel throughout. No issue is raised as to competency, and to rebut an insinuation that such was an issue, his Reply Brief states: "[Defendant] did not say the Public Defender was . . . incompetent." But for this appeal, all would assume that the order was properly entered. In our opinion, it was, and therefore, we affirm it.

Affirmed.

TRAPP, J., concurs.

CRAVEN; J., dissenting:

The majority opinion in this case permits statutory conditions precedent to commitment as a sexually dangerous person to be supplied by stipulation. It is my view that this is not permissible under the required strict construction of the act relating to sexually dangerous persons.

It has been held that proof of a mental disease that has existed for at least one year prior to the filing of a petition was essential to support a jury verdict finding the defendant to be a sexually dangerous person. People v. Sims, 382 Ill 472, 47 NE2d 703. In this case the finding was by the court based upon a stipulation that expanded psychiatric findings. The effect of the majority opinion is to permit of voluntary commitment as a sexually dangerous person.

In the case of People v. Capoldi, 10 Ill2d 261, 139 NE2d 776, and in other cases, the most recent being People v. Olmstead, 32 Ill2d 306, 205 NE2d 625, the court has stated that in proceedings under the Sexually Dangerous

Persons Act the defendant must be accorded the essential protections available in a criminal trial and that the Sexually Dangerous Persons Act must be given a strict construction.

The commencement of proceedings under the Sexually Dangerous Persons Act is conditioned upon the existence of a criminal charge. After the filing of a petition provision is made for the court to appoint two "qualified psychiatrists" to make an examination of the defendant and to report the same to the court and to the defendant. Here, the psychiatrists were appointed prior to the filing of the petition.

In order that a person be found to be a sexually dangerous person, it must be established that he is suffering from a mental disorder, which mental disorder has existed for a period of at least one year immediately prior to the filing of the petition, coupled with criminal propensities to the commission of sex offenses, and these propensities must have been demonstrated toward acts of sexual assault or acts of sexual molestation of children. This proceeding, then, is a judicial inquiry into the question of mental disorder and it has nothing to do with guilt or innocence, but only with the ascertainment of mental condition. It seems to me highly contrary to strict construction to permit one who is the subject of inquiry as to mental condition to supply, by way of stipulation, omitted but essential proof of the mental condition.

The record in this case indicates that counsel for the defendant was under the erroneous impression that commitment as a sexually dangerous person would leave pending the criminal charge. It seems one of the motives for the stipulation and the resulting commitment as a sexually dangerous person was an understanding that the criminal charges then pending would be dismissed. Such dismissal is not discretionary, but rather dismissal of the underlying criminal charge is required upon com-

mitment as a sexually dangerous person. (Ill Rev Stats 1963, c 38, par 105–9.)

Commitment as a sexually dangerous person means not only a deprivation of liberty and incarceration not unlike incarceration upon conviction of a felony but carries with it the imposition of a label as a sexually dangerous person. The legislature has conditioned the imposing of such a label by requiring psychiatric testimony as to the existence of a mental condition as well as the other stated conditions precedent. See People v. Hampsten, 32 Ill2d 596, 208 NE2d 577 (1965). Since the finding of the court in this case could not be based upon such psychiatric testimony which, however fallible, is more certain as to mental condition than the stipulation of the one sought to be committed, the order of commitment should be reversed.