THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM FRANKLIN AUSTIN, Defendant-Appellant.

(No. 73-225;

Second District—December 11, 1974.

George Pease, Public Defender, of Waukegan (Michael J. Boyd, Assistant Public Defender, of counsel), for appellant.

Jack Hoogasian, State's Attorney, of Waukegan, and James W. Jerz and Edward Morris, both of Model District State's Attorneys Project, of Elgin, for the People.

Mr. JUSTICE YONTZ delivered the opinion of the court:

This case arises under the provisions of the Illinois Sexually Dangerous Persons Act (Ill. Rev. Stat. 1971, ch. 38, par. 105—1.01 *et seq.*). On March 20, 1972, William F. Austin, a high-school gym teacher, was in-

dicted on three counts of indecent liberties with a child and one count of contributing to the sexual delinquency of a child. On June 2, 1972, pursuant to the provisions of the Illinois Sexually Dangerous Persons Act, the State petitioned the Circuit Court of the 19th Judicial Circuit, Lake County, Illinois, to declare Austin to be a *"sexually dangerous person"* and to appoint two qualified psychiatrists to examine him and to file written reports pursuant to sections 3 and 4 of the Sexually Dangerous Persons Act (Ill. Rev. Stat. 1971, ch. 38, pars. 105—3 and 105—4).

On February 20, 1973, a hearing before a jury was held to determine whether Austin was a "sexually dangerous person" and the jury returned a verdict finding Austin to be a "sexually dangerous person." The Director of the Department of Corrections was appointed Austin's guardian and Austin was committed to his custody pursuant to section 8 of the Act (Ill. Rev. Stat. 1971, ch., 38, par. 105—8). Austin now brings this appeal seeking a reversal of the Jury's finding that he is a "sexually dangerous person" and further seeking a termination of the commitment order.

The defendant Austin has presented to this court by brief three assignments of error.

This court will first address itself to the defendant's second assignment of error that the trial court erred in permitting Dr. Baron to testify about an examination of the defendant and findings which were not a part of, or reflected in, his written report.

One of the two psychiatrists appointed by the trial court to examine the defendant Austin to determine whether defendant Austin was "sexually dangerous" was a Dr. Ronald Baron.

Under the provisions of section 4 of the Act, the court-appointed psychiatrist examining a respondent must file a written report with the court, and a copy of this written report must be delivered to the respondent. Dr. Baron examined Austin twice: once on July 24, 1972, and again on October 14, 1972. However, Dr. Baron filed his written report, dated October 5, 1972, *after* the initial examination *but before* the second examination. Austin and his attorney received a copy of the written report, dated October 5, 1972 (received prior to trial). However, Dr. Baron did *not* file a written report with the court after his second examination of Austin was conducted on October 14, 1972.

At the trial Dr. Baron testified that at the initial examination (July 24, 1972) Austin had stated that he had been accused of having sexual involvement with three youngsters, but that he had denied such accusation. Austin also had admitted that he had been on probation "* * * for fooling around" with a 16-year-old male in Chicago. However, at the initial interview Austin "took the Fifth Amendment" and refused to talk about the circumstances of the current charges and in general was

evasive. Apparently at the initial interview Austin informed Dr. Baron about his "involvement in Minnesota."

Based upon the initial interview of July 24, 1972, Dr. Baron did not arrive at a definite conclusion that Austin was "sexually dangerous." Instead, Dr. Baron arrived at a "conditional kind of conclusion" that Austin was "sexually dangerous" conditioned upon a verification and substantiation of certain matters relating to sexual offenses which Austin had told him about at the initial examination.

In his written report dated October 5, 1972, Dr. Baron stated that certain "items" were finally verified after the initial examination—that is, items relating to sexual relations with certain youngsters and the fact of serving time for sexual offenses with people under age. Dr. Baron then changed his "conditional conclusion" regarding Austin to an "unconditional" conclusion based upon receiving such verification and substantiation by securing certain information (after the initial interview, but before the second interview) from the State's Attorney's office relating to previous offenses and convictions.

Austin's counsel vigorously objected to any reference to the second examination of Austin by Baron, on the grounds that: (1) Austin had not been furnished with a copy of a written report from Baron regarding the second examination (no written report was made); (2) Baron could not have drawn a conclusion in his written report dated October 5, 1972, based upon his examination of October 14, 1972; (3) Baron should not be entitled to "embellish" his opinion of October 5 based on his examination of Austin of October 14, 1972; and (4) Baron had completed the office of his appointment by reason of filing the written report of October 5, 1972, and therefore was acting outside the scope of such appointment in examining Austin on October 14, 1972. The trial court overruled these objections and permitted Dr. Baron to testify with regard to the second examination conducted on October 14, 1972, even though no written report had been prepared after the second examination.

As noted previously, section 4 of the Act provides the procedure by which the trial court appoints two qualified psychiatrists to examine one against whom a petition to declare "sexually dangerous" has been filed. This statute also specifically determines what the court-appointed psychiatrists shall do:

> "*  *  *  and the psychiatrists shall file with the court a report in writing of the result of their examination, a copy of which shall be delivered to the respondent."

Ill. Rev. Stat. 1971, ch. 38, par. 105—4.

■■ The Illinois Sexually Dangerous Persons Act must be strictly construed. (*People v. Pygott*, 64 Ill.App.2d 284, 211 N.E.2d 382.) While

proceedings under the Act are considered to be civil (not criminal) in nature (Ill. Rev. Stat. 1971, ch. 38, par. 105—3.01), nevertheless it is widely recognized that the effect of such proceeedings may be to deprive a person of liberty and accordingly such proceedings resemble a criminal prosecution in many critical respects. *People v. Abney*, 90 Ill.App.2d 235, 232 N.E.2d 784.

■■ In the present case, Dr. Ronald Baron, appointed by the trial court, filed his written report (pursuant to section 4) subsequent to his *first* examination of Austin (July 24, 1972), but prior to his *second* examination of Austin (October 14, 1972). No other written report was filed following Baron's second examination of Austin. Over the objection of Austin's counsel, the trial court permitted Dr. Baron to testify with regard to the second examination of Austin (on October 14, 1972). Clearly this was a prejudicial error.

■■ The purpose of providing the defendant with a copy of the psychiatrist's written report *before the hearing* is manifest: to give the defendant an opportunity to know the psychiatrist's findings and the basis of such findings—to give the defendant an opportunity to cross-examine the psychiatrist in an intelligent fashion and without surprise. Such manifest purpose was thwarted by permitting Dr. Baron to testify about the second examination. While the statute does not preclude a "subsequent" examination after the psychiatrist files his written report, nevertheless due process of law dictates that the psychiatrist not testify outside the scope of his written report. At a minimum, Dr. Baron should have filed a supplementary written report covering the second examination (with a copy to Austin prior to trial) prior to testifying about the second examination. Obviously the lack of a written report covering the "results" of the second examination prejudiced Austin in that he could not know prior to trial that Baron would testify that the "conditional" conclusion was "confirmed" by Austin's more-responsive statements made at the second examination. Austin was denied the right to confront Baron under the procedures provided for by this statute.

Therefore, this court finds that the trial court did err in permitting Dr. Baron to testify with regard to his second examination of defendant Austin. For it is clear that Dr. Baron failed to file a written report with regard to his second examination, and obviously the defendant Austin could not receive a copy of what did not exist.

In view of the substantial basis for reversal on this ground alone, this court will not resolve the defendant's other two assignments of error.

This case is reversed and remanded.

G. MORAN and CARTER, JJ., concur.