NO. 4-96-0490

                          IN THE APPELLATE COURT 

                                OF ILLINOIS

                              FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,    )  Appeal from

          Plaintiff-Appellant,          )  Circuit Court of

          v.                            )  Champaign County

NATHAN J. ANTOINE, JR.,                 )  No. 96CF262

          Defendant-Appellee.           )  

                                        )  Honorable

                                        )  Harold L. Jensen,

                                        )  Judge Presiding.

_________________________________________________________________

          PRESIDING JUSTICE STEIGMANN delivered the opinion of

the court:

          In April 1996, the State filed a petition to have

defendant, Nathan J. Antoine, Jr., declared a sexually dangerous

person, pursuant to the Sexually Dangerous Persons Act (Act) (725

ILCS 205/0.01 et seq. (West 1994)).  In May 1996, defendant filed

a motion for involuntary dismissal, alleging that the two psychi-

atrists appointed to examine him did not agree that he was a

sexually dangerous person.  Following a hearing on the motion in

May 1996, the trial court granted defendant's motion for involun-

tary dismissal.  The State appeals and we reverse and remand.

                              I.  BACKGROUND

          Section 1.01 of the Act defines a sexually dangerous

person as:  

               "[One] suffering from a mental disorder,

          which mental disorder has existed for a peri-

          od of not less than one year, immediately

          prior to the filing of the petition hereinaf-

          ter provided for, coupled with criminal pro-

          pensities to the commission of sex offenses,

          and who ha[s] demonstrated propensities to-

          ward acts of sexual assault or acts of sexual

          molestation of children ***."  725 ILCS

          205/1.01 (West 1994).

          Section 4 of the Act provides that the trial court

shall appoint two qualified psychiatrists to personally examine

the defendant, ascertain whether he is sexually dangerous, and

file with the court a written report of the examination result. 

725 ILCS 205/4 (West 1994).  

          The trial court appointed psychiatrists Joseph Bohlen

and Lawrence Jeckel to examine defendant.  In April 1996, Dr.

Bohlen submitted a report to the court concluding that defendant

suffered from a mental disorder, sexual paraphilia (violent type)

and, therefore, met the statutory criteria for a sexually danger-

ous person.  In May 1996, Dr. Jeckel submitted a report to the

court concluding that defendant suffered from a character disor-

der, but that he did not have a mental disorder.  Dr. Jeckel's

report stated, in relevant part, as follows:

          "[Defendant] has the mentality of a rapist or

          a killer.  He does not have a mental illness

          that would be classified on DSM-IV Axis I. 

          His behavior is part of a character disorder,

          an enduring set of character traits charac-

          terized by deceit, drug use, and violent

          impulses toward women.

               Therefore, although [defendant] has

          demonstrated criminal propensities toward

          acts of sexual assault in the past, he is not

          suffering from a mental disorder that has

          existed for one year." 

Dr. Jeckel thus concluded that defendant did not meet the Act's

criteria for a sexually dangerous person.  

          In May 1996, defendant filed a motion for involuntary

dismissal because the two psychiatrists did not agree on whether

defendant was a sexually dangerous person pursuant to the Act. 

Defendant contended that this court's decision in People v. Cole,

5 Ill. App. 3d 836, 284 N.E.2d 53 (1972), required dismissal

under these circumstances.  At the hearing on defendant's motion,

the trial court questioned the reasoning in Cole, but dismissed

the petition because the court believed Cole required it to do

so.   

                               II.  ANALYSIS

          The State appeals, arguing that the trial court erred

by dismissing the petition.  The State contends that (1) the lan-

guage of the statute does not require that both psychiatrists

conclude that a defendant is sexually dangerous; and (2) to the

extent that Cole holds that a trial court must dismiss a petition

when the psychiatrists disagree, it is erroneous and should be

overturned.  In response, defendant argues that (1) the statute

supports the trial court's dismissal; and (2) the doctrine of

stare decisis requires this court to affirm, based on Cole.  We

agree with the State.

                          A.  Statutory Language

          The State first contends that the Act contains no

language that requires a trial court to dismiss a petition if

both court-appointed psychiatrists do not agree that the defen-

dant is a sexually dangerous person.  Defendant responds that the

entire Act must be construed in light of and consistent with sec-

tion 3.01 of the Act, which places upon the State the burden of

proving beyond a reasonable doubt that a defendant is a sexually

dangerous person (725 ILCS 205/3.01 (West 1994)).  Thus, defen-

dant contends that if the court-appointed psychiatrists disagree,

the State can never establish a prima facie case, and the trial

court must dismiss the petition.  

          Section 4 of the Act reads as follows:

               "After the filing of the petition, the

          court shall appoint two qualified psychia-

          trists to make a personal examination of such

          alleged sexually dangerous person, to ascer-

          tain whether such person is sexually danger-

          ous, and the psychiatrists shall file with

          the court a report in writing of the result

          of their examination, a copy of which shall

          be delivered to the respondent."  725 ILCS

          205/4 (West 1994).  

Nothing in this section indicates that the court-appointed

psychiatrists must agree in their court-ordered assessments that

defendant is a sexually dangerous person.  Furthermore, no lan-

guage in any other section of the Act explicitly states or even

implies that a trial court must dismiss a petition if the psychi-

atrists do not so agree.  

          Defendant contends that the burden of proof requirement

establishes a "constitutional imperative" that ultimately re-

quires a trial court to dismiss if both psychiatrists do not

report that defendant is a sexually dangerous person.  He relies

on cases which emphasize the need for criminal due process safe-

guards in proceedings under the Act.  See People v. Pembrock, 62

Ill. 2d 317, 342 N.E.2d 28 (1976) (establishing the State's

burden of proving a defendant's status beyond a reasonable

doubt); People v. Shiro, 52 Ill. 2d 279, 287 N.E.2d 708 (1972)

(establishing a defendant's right to counsel in seeking release

under the Act); People v. Olmstead, 32 Ill. 2d 306, 205 N.E.2d

625 (1965) (establishing a defendant's rights to counsel and jury

trial in proceedings under the initial petition and a later

application for discharge).  We are not persuaded by defendant's

logic.

          We acknowledge the importance of scrupulously ensuring

the fairness of judicial proceedings that may result in indefi-

nite commitment of a person determined to be sexually dangerous. 

See Pembrock, 62 Ill. 2d at 321, 342 N.E.2d at 29.  However, we

do not agree with defendant that the Act's burden of proof and

the importance of due process safeguards mandate dismissal under

the circumstances of this case.  

          In construing legislation, a court's task is to give

effect to the legislature's intent in enacting the statute, which

is best indicated by the statute's plain language.  Collins v.

Board of Trustees of the Firemen's Annuity & Benefit Fund, 155

Ill. 2d 103, 110, 610 N.E.2d 1250, 1253 (1993).  The Act contains

no language that indicates the legislature intended a trial court

to dismiss a petition where the court-appointed psychiatrists do

not agree that the defendant is a sexually dangerous person, and

we decline to read such a requirement into the Act.

                             B.  Stare Decisis

          The State acknowledges that the Cole holding supports

the trial court's dismissal, but argues that we should overrule

Cole.  Defendant responds that the doctrine of stare decisis

requires us to reaffirm Cole and affirm the dismissal in this

case.  

          In Cole, two court-appointed psychiatrists examined the

defendant and submitted reports which conflicted as to whether he

was sexually dangerous.  Cole, 5 Ill. App. 3d at 837, 284 N.E.2d

at 53.  One psychiatrist testified at a hearing that the defen-

dant was sexually dangerous; the other did not testify, but

submitted a report which concluded that the defendant was not a

sexually dangerous person.  The trial court found that because

the testimony was uncontradicted, the State had established a

prima facie case that the defendant was a sexually dangerous

person.  On appeal, this court held that "the clear implication

of this statute is that both psychiatrists in their preliminary

report[s] *** should find that [defendant] is a sexually danger-

ous person."  Cole, 5 Ill. App. 3d at 837, 284 N.E.2d at 54. 

Because the psychiatrists' reports conflicted on this point, the

State had not established a prima facie case, and this court re-

versed the trial court's finding that the defendant was a sexual-

ly dangerous person.  Cole, 5 Ill. App. 3d at 838, 284 N.E.2d at

54.    

          Stare decisis is a policy of the courts to stand by

precedent and leave settled points of law undisturbed.  Charles

v. Seigfried, 165 Ill. 2d 482, 492, 651 N.E.2d 154, 159 (1995). 

The supreme court recently addressed this doctrine, and wrote the

following:

          "The doctrine of stare decisis is the means

          by which courts ensure that the law will not

          merely change erratically, but will develop

          in a principled and intelligible fashion. 

          Stare decisis permits society to presume that

          fundamental principles are established in the

          law rather than in the proclivities of indi-

          viduals.  The doctrine thereby contributes to

          the integrity of our constitutional system of

          government both in appearance and in fact. 

          Stare decisis is not an inexorable command. 

          However, a court will detour from the

          straight path of stare decisis only for ar-

          ticulable reasons, and only when the court

          must bring its decisions into agreement with

          experience and newly ascertained facts." 

          Chicago Bar Ass'n v. Illinois State Board of

          Elections, 161 Ill. 2d 502, 510, 641 N.E.2d

          525, 529 (1994).   

          Stare decisis considerations weigh heavily in the area

of statutory construction, in part because a departure from

precedent amounts to an amendment of the statute itself.  Froud

v. Celotex Corp., 98 Ill. 2d 324, 336, 456 N.E.2d 131, 137

(1983).  Indeed, such considerations are particularly strong

when, as here, the legislature has amended the Act in question

since the decision (that a party argues should be followed

because of stare decisis) was rendered.  In particular, we note

that the legislature--on more than one occasion--has amended

section 3.01 of the Act, addressing the State's burden of proof. 

See Pub. Act 79-1365, §19 eff. October 1, 1976 (1976 Ill. Laws

1034, 1060); Pub. Act 80-727, §1 eff. October 1, 1977 (1977 Ill.

Laws 2189); Pub. Act 81-661, §7 eff. September 16, 1979 (1979

Ill. Laws 2513, 2516); Pub. Act 82-783, art. XI, §80 eff. July

13, 1982 (1982 Ill. Laws 220, 933).

          When the legislature amends a statute but leaves un-

changed provisions which have been judicially construed, the

unchanged provisions ordinarily retain the construction given

prior to the amendment.  People v. Agnew, 105 Ill. 2d 275, 280,

473 N.E.2d 1319, 1322 (1985).  The legislature is presumed to

know of judicial interpretation of statutes; thus, its inaction

suggests agreement with the judicial interpretation.  In re May

1991 Will County Grand Jury, 152 Ill. 2d 381, 388, 604 N.E.2d

929, 933 (1992); Agnew, 105 Ill. 2d at 280, 473 N.E.2d at 1322.  

          We also acknowledge that stare decisis commands greater

respect when, as here, at issue is a judicial construction of a

statute, as opposed to a constitutional provision.  This is so

because of the difficulty inherent in amending a constitution to

overcome a judicial misinterpretation.  Thus, courts must be

willing to revisit decisions based upon constitutional interpre-

tations to determine if those decisions deserve further adher-

ence.  See Chicago Bar Ass'n, 161 Ill. 2d at 510, 641 N.E.2d at

529; Arizona v. Rumsey, 467 U.S. 203, 212, 81 L. Ed. 2d 164, 172,

104 S. Ct. 2305, 2311 (1984) ("Although adherence to precedent is

not rigidly required in constitutional cases, any departure from

the doctrine of stare decisis demands special justification"). 

In contrast, because the legislature can easily amend statutes in

response to--and to correct--judicial misinterpretations, the

courts have much less need to take it upon themselves to second-

guess precedent interpreting a particular statute.  The courts

can (and do) reasonably conclude that the legislature is likely

to correct judicial misinterpretations, and therefore the courts

need act only in the most extraordinary and compelling cases.  In

our judgment, the case before us presents just such an extraordi-

nary and compelling circumstance, in part because this court's

decision in Cole was so erroneous.  

          We can find no justification for this court's holding

in Cole.  As stated earlier, the statutory language does not sup-

port such a conclusion.  Neither section 4 nor any other provi-

sion of the Act remotely addresses the procedural effect of con-

flicting psychiatric reports.  

          Moreover, it is unprecedented in Illinois law that a

conflict in a material factual issue would bar a trier of fact

from hearing evidence on the issue and resolving it on the

merits.  Summary judgment proceedings exemplify this principle; a

trial court may grant summary judgment only when no dispute

exists as to material facts.  735 ILCS 5/2-1005(c) (West 1994).

          Regarding defendant's argument about a "constitutional

imperative" because of the State's burden of proving beyond a

reasonable doubt that he is a sexually dangerous person, we note

that section 6-2 of the Criminal Code of 1961 formerly required

the State to prove beyond a reasonable doubt that a defendant

asserting the insanity defense was not insane.  See Ill. Rev.

Stat. 1981, ch. 38, pars. 6-2, 6-4, 3-2.  The legislature amended

that section effective January 1, 1994, in 1983 to (1) shift the

burden of proof to the defendant, and (2) change the burden of

proof to a preponderance of the evidence.  See Ill. Rev. Stat.

1983, ch. 38, par. 6-2(e); Pub. Act 83-288, §1 eff. January 1,

1984 (1983 Ill. Laws 2035).  

          When the State still had the burden of proving a

defendant was not insane, it was not uncommon for psychiatrists

who had examined defendants to reach different conclusions.  Yet,

these differences did not prevent the State from meeting its

heavy burden of proof.  In People v. Eckhardt, 156 Ill. App. 3d

1077, 1090, 509 N.E.2d 1361, 1370-71 (1987), the second district

addressed a murder case under the old insanity statute and wrote

the following: 

          "In deciding whether the State has proved the

          defendant sane beyond a reasonable doubt, the

          trier of fact must consider the totality of

          the evidence, weighing testimony and deter-

          mining credibility of witnesses, both expert

          and lay, without being required by law to

          accept the opinions of psychiatrists regard-

          ing sanity.  [Citation.]  The trial judge is

          not obligated to accept the opinions of psy-

          chiatrists proffered by the defendant, but is

          entitled to consider contrary opinions of the

          State's expert witness.  [Citation.]  The

          resolution of contradictory testimony by

          experts in the determination of whether the

          defendant was legally sane at the time of

          the crime and the determination of its weight

          and credibility are for the trier of fact." 

          (Emphasis added.)

See also People v. Taylor, 110 Ill. App. 3d 112, 118, 441 N.E.2d

1231, 1235 (1982) ("In deciding the question of sanity, the trier

of fact may accept [one] expert's opinion over another").

          The same analysis applies to psychiatrists who disagree

regarding whether a defendant is a sexually dangerous person. 

Not only may the trial court choose to believe one psychiatrist

over another, but the court may do so and find in favor of the

State's petition even when, as here, the State's burden is proof

beyond a reasonable doubt.  We add that the fact that the court

appoints the examining psychiatrists, under section 4 of the Act,

as opposed to having them selected by the State and defendant, is

irrelevant to the question of how the court--acting as trier of

fact--should evaluate the psychiatrists' testimony.

          Finally, the State points out in its brief--and we

agree--that the Cole holding may lead to absurd results.  The

practical effect of Cole is that the State is barred from chal-

lenging the facts or beliefs that form the basis for the expert's

opinion, and the trier of fact is precluded from hearing evidence

on the issue.  Thus, the Cole court's interpretation of the Act

requires a trier of fact to delegate its decision-making authori-

ty to a third party.  The legislature could not have intended

such an absurd result.  In construing legislation, a court should

interpret it in a manner that is reasonable and will not produce

absurd or unjust results that the legislature could not have

intended.  State Farm Fire & Casualty Co. v. Yapejian, 152 Ill.

2d 533, 541, 605 N.E.2d 539, 542 (1992).  

          We also note that Cole, which was rendered by this

court 24 years ago, has been cited only twice in that time.  In

People v. Hodges, 36 Ill. App. 3d 422, 425, 343 N.E.2d 565, 568

(1976), the third district referred to it in passing when ad-

dressing a different issue.  In People v. Becraft, 74 Ill. App.

3d 407, 410, 393 N.E.2d 110, 112 (1979), this court seemingly

backed away from its earlier decision in Cole, stating as fol-

lows:  "[T]he Act does not state such a requirement [that both

psychiatric reports must agree that defendant is a sexually

dangerous person] ***."  Thus, we need not be concerned that our

ruling will result in confusion among the appellate districts. 

See Cravens v. Inman, 223 Ill. App. 3d 1059, 1075, 586 N.E.2d

367, 377 (1991).

          In Alvis v. Ribar, 85 Ill. 2d 1, 24, 421 N.E.2d 886,

896 (1981), the supreme court addressed the doctrine of stare

decisis in the context of a common law doctrine as follows:  

               "The tenets of stare decisis cannot be

          so rigid as to incapacitate a court in its

          duty to develop the law.  [Citation.]  Clear-

          ly, the need for stability in law must not be

          allowed to obscure the changing needs of

          society or to veil the injustice resulting

          from a doctrine in need of reevaluation."    

The decisions of this court ought to be soundly based; Illinois

jurisprudence demands no less.  Cole was wrong, is not soundly

based, and we hereby overrule it.  

          Our decision here is not inconsistent with the supreme

court's decision in Olmstead on which the Cole court ostensibly

relied.  In Olmstead, both court-appointed psychiatrists agreed

that the defendant was sexually dangerous, but only one testi-

fied.  The circuit court granted the State's petition and the

supreme court affirmed, stating:  "We find no requirement in the

[A]ct that both psychiatrists shall testify, and we feel that the

testimony of one may provide a prima facie case in the absence of

contradictory reports."  Olmstead, 32 Ill. 2d at 312, 205 N.E.2d

at 629.  The supreme court in Olmstead did not address the ques-

tion of how to proceed if the psychiatrists file contradictory

reports.  Thus, the Cole court went far beyond Olmstead when it

dismissed the State's petition based on the conflicting reports.

                             III.  CONCLUSION

          For the reasons stated, we reverse the trial court's

dismissal of the State's petition and remand for further proceed-

ings.  

          Reversed and remanded.

          McCULLOUGH and KNECHT, JJ., concur.