THE PEOPLE *ex rel.* David N. Conn *et al.,* Petitioners, *vs.*
ROSS RANDOLPH, Director of Public Safety, *et al.,*
Respondents.

*Opinion filed August 16, 1966.*

Bernard H. Bertrand and Ralph D. Walker, both of East St. Louis, for petitioners.

William G. Clark, Attorney General, of Springfield, and Raymond J. Terrell, State's Attorney, of Springfield, for respondents.

Mr. Justice Solfisburg delivered the opinion of the court:

This is an original petition for writ of *mandamus* brought by five members of the Illinois Bar; the respondents are the Auditor, Treasurer, Attorney General and Director of Public Safety of the State of Illinois. Petitioners were appointed in the trial court to represent four indigent inmates of the Illinois State Penitentiary located in Randolph County. The four prisoners were indicted for the alleged murders of three prison guards in the course of a riot that occurred at the prison. The murder trial is presently in progress in the circuit court of Sangamon County and petitioners are all before that court in their capacity as appointed defense counsel. The petition for *mandamus* seeks to compel the respondents to reimburse and compensate the

petitioners for their expenses and services in defending the indigent prisoners.

The petitioners reside and practice law in Randolph County, except for Richard Shaikewitz who resides in Alton, Illinois. After the prisoners were indicted for murder in Randolph County and the petitioners were appointed, the case was transferred on a defense motion to the circuit court of Sangamon County. The trial commenced on May 3, 1966, after lengthy pretrial proceedings. (*People* v. *Bassett et al.,* Nos. 554-66, 555-66 and 556-66, circuit court of Sangamon County.) Petitioners were then required to leave their homes and offices and reside in Springfield, the county seat of Sangamon, approximately 150 miles from Randolph County.

The first nine weeks of trial were consumed in selecting a jury and over 1,150 veniremen were questioned before a jury was finally empanelled. The prosecution had, at the time of the filing of this petition, presented 16 witnesses and has disclosed that it will call from 60 to 100 more witnesses during its case in chief.

After some four weeks of trial the petitioners filed a motion in the trial court seeking reimbursement of their out-of-pocket expenses and reasonable fees for services rendered. The trial court allowed the motion and ordered the treasurer of Sangamon County to make payment to the petitioners upon receipt of itemized statements approved by the court; the order further directed that Sangamon County be reimbursed by the county treasurer of Randolph County, and that Randolph County be reimbursed by the State of Illinois. The trial court, in granting the motion for expenses and fees, specifically found "that on May 2, 1966 the attorneys for the defendants took up residence in the City of Springfield, Illinois, and have been in constant trial in the selection of a jury since May 3, 1966, to the date of this order; that it is apparent to the Court that it will take several months to select a jury and to try this case; that

never before in the history of the State of Illinois has Court appointed counsel been asked to devote so much time, energy, incur so many expenses, and to expend so much of their own personal funds for the defense of any indigent persons in a trial of such lengthy duration and complexities; that the attorneys herein are dependent upon their private practice for their livelihood, two of said attorneys being sole practitioners, and that said attorneys have been unable to carry on their private practice of law and earn their livelihood during the duration of this trial; that all of said attorneys are married, have families depending on them for support; that said attorneys are forced to live away from their families for the duration of this trial, and are forced to maintain two residences; that said attorneys have been forced to abandon various non-legal enterprises, which bring monetary returns to said attorneys, and they have suffered and will suffer the loss of legal business that will affect their income, both presently and in the future; and that the State has demanded the death penalty in this case, which has necessitated that the defense counsel use every effort and legal safeguard to protect the rights of the defendants."

Upon submission of the petitioners' itemized statements as approved by the trial court (totaling approximately $31,000), the treasurers of both Sangamon County and Randolph County represented that there were no funds to pay the petitioners. Thereupon, on July 14, 1966, the petitioners filed a motion to withdraw as counsel for the indigent prisoners because of their inability to continue to pay witness fees and other trial expenses, and in the case of one of the petitioners an inability to pay his own living expenses. The petitioners' motion to withdraw is under advisement in the trial court.

The petitioners then filed the instant original *mandamus* proceeding to compel the respondents jointly and severally "to do everything necessary within their powers to forth-

with comply with the order of the Circuit Court of Sangamon County" respecting payment of expenses and fees to the petitioners. We granted leave to file the petition and the issues were closed by answer of the respondents admitting the petition's allegations of fact.

The petition and its supporting exhibits disclose that the petitioners have incurred financial burdens and hardships far in excess of those normally attendant upon the defense of indigent persons. The petitioners have been compelled to forsake their regular law practice during the trial, thereby eliminating their major source of income. At the same time they must pay substantial travel and living expenses as well as the day-to-day costs of litigation, such as stenographic expenses and witness fees. The petitioners are thus suffering a two-fold depletion of their resources, both by way of a constant outgo of funds and loss of current income. Petitioners are in such straitened fiscal condition that they are now unable to continue payment of current trial costs; at least one of the petitioners is close to the brink of insolvency. We agree with the trial court's observation that a great personal hardship and sacrifice has been imposed upon these petitioners in serving as attorneys for these indigent defendants.

The trial court's duty to furnish counsel for the indigent prisoners was imposed both by statute (Ill. Rev. Stat. 1965, chap. 38, par. 113—3) and by the Federal and State constitutions. (*People* v. *Morris*, 3 Ill.2d 437; *Gideon* v. *Wainwright*, 372 U.S. 335, 9 L. Ed. 2d 799.) The trial court discharged its duty by appointing the petitioners as counsel pursuant to the inherent power of the judiciary to regulate the practice of law and conduct the orderly administration of justice. An attorney is an officer of the court and his license to practice carries with it the steadfast obligation to serve the court whenever called upon to do so. The defense of paupers accused of crime has traditionally been considered one of the services that every member of the bar

must be prepared to provide upon court request. See *United States* v. *Dillon,* 346 F.2d 633; *State* v. *Rush,* 46 N.J. 399, 217 A.2d 441.

At this time it is necessary to hold only that in the extraordinary circumstances presented in this case, the court's inherent power to appoint counsel also necessarily includes the power to enter an appropriate order ensuring that counsel do not suffer an intolerable sacrifice and burden and that the indigent defendants' right to counsel is protected.

If such judicial power did not exist, the courts probably could not proceed, and certainly could not conclude the trial of indigent defendants in cases such as this. To permit the petitioners to withdraw after nine weeks of trial would be a prodigious waste of resources already spent, and would provide no assurance that a dilemma similar to the one existing now would not likewise result after the appointment of new counsel. We hold that upon the record presented here the petitioners are clearly entitled to payment of their costs and fees forthwith, as ordered by the trial court. A permanent solution to the problem presented is an appropriate subject for the legislature. The problem having now been exposed we trust that the General Assembly will respond. See *State* v. *Rush,* 46 N.J. 399, 217 A. 2d 441.

Respondents contend that the amount of petitioners' reimbursement is specifically limited to $500 ($250 in attorney fees and $250 in expert witness fees) for each defendant represented in a capital case. (Ill. Rev. Stat. 1965, chap. 38, par. 113—3.) Respondents also contend that our decision in *People* v. *Zuniga,* 31 Ill.2d 429, precludes the recovery of any amount in excess of the statutory maximum. There we reversed an order of the trial court awarding fees in excess of the statutory maximum to counsel for an indigent defendant. There was no showing in *Zuniga* that any undue sacrifice or hardship was imposed upon counsel or that the accused's right to counsel was in any

way impaired. Here the petitioners claim reimbursement in their *own* right as appointed counsel *and* upon the peculiar and exceptional showing that they are financially incapable of continuing to represent the indigent prisoners at the trial.

The trial court held in the instant case that the statute providing for a maximum of $500 for fees and costs would be unconstitutional if held applicable to the extraordinary facts and circumstances presented here. The statute is not unconstitutional on its face and the $500 maximum is reasonable and appropriate where an appointed attorney can continue to accommodate his regular practice and business and is not compelled to assume a staggering burden and sacrifice that no reasonable person could expect of any member of the bar. However, the statute cannot constitutionally be applied where it appears, as here, that appointed counsel cannot continue to serve because they are suffering an extreme, if not ruinous, loss of practice and income and must expend large out-of-pocket sums in the course of trial. See *Gideon* v. *Wainwright,* 372 U.S. 335.

The respondents also contend that any payment of funds to the petitioners in excess of the $500 statutory maximum would be a violation of article IV, section 17, of the Illinois constitution. That provision interdicts the expenditure of State funds "except in pursuance of an appropriation made by law  *  *  *." The respondents cite *People ex rel. Board of Trustees of the University of Illinois* v. *Barrett,* 382 Ill. 321, which held that the State Auditor may not be directed to issue and deliver warrants to anyone claiming payment from the State unless it be clearly shown that a proper appropriation has been made and that funds are available in the appropriation against which the warrant may be drawn.

Subsequent decisions have made clear that the requirement of article IV, section 17, is satisfied if the expenditure is within the proper purposes of the public authority expending the funds and is reasonably within the broad cate-

gory of an appropriation made by the General Assembly. Thus, in *Turkovich* v. *Board of Trustees of the University of Illinois,* 11 Ill.2d 460, 467-69, we declared that the General Assembly cannot be expected to specifically appropriate funds for each of the particular activities and functions of a public body. In approving a disbursement for a broadcasting station at the University of Illinois, we held that if an expenditure is for an activity within the overall purposes and powers delegated to the public agency by the legislature, the expenditure may properly be considered in pursuance of the appropriation for the ordinary and contingent expenses of the agency. See, also, *Owens* v. *Green,* 400 Ill. 380.

The State Penitentiary Act, (Ill. Rev. Stat. 1965, chap. 108, par. 118,) provides that fees and costs arising from the "prosecution" of convicts for crimes committed within the penitentiary system shall be paid by the State. The "prosecution" of indigent convicts cannot constitutionally proceed unless the trial court provides counsel for the accused convicts. Where, as in this case, the statutory maximum for fees and costs to appointed counsel in a capital case is not applicable, the Penitentiary Act's provision for payment of "prosecution" costs is clear statutory authority for reimbursement of fees and costs to the petitioners by the State.

The jurisdiction, custody and care of convicts is lodged with the Department of Public Safety (Ill. Rev. Stat. 1965, chap. 108, par. 10) ; the fees and costs for the "prosecution" of convicts are thus chargeable to that Department. Since we hold that the petitioners' fees and costs are a part of the costs of "prosecution" within the Penitentiary Act, the petitioners' fees and costs are a proper disbursement chargeable to the Department of Public Safety's current appropriation. We take judicial notice of the fact that $300,000 was appropriated at the last session of the General Assembly for contingencies for the Department of Public Safety during the current biennium, and that $229,000 is presently un-

expended. (1965 Laws of Illinois, p. 1746.) (See *Di Bella v. Cuccio,* 15 Ill.2d 580.) This appropriation may properly be used to reimburse the petitioners pursuant to the order of the trial court.

The trial court ordered that the payment and reimbursement of petitioners be made first by Sangamon County, that Sangamon be reimbursed by Randolph, and that Randolph in turn be reimbursed by the State of Illinois. However, it appears that neither Sangamon nor Randolph have funds immediately available for such payments. It is also apparent that justice requires that the petitioners receive prompt payment of their reasonable fees and expenses in order to continue to render the legal services required of them.

Since it is our opinion that the State is ultimately liable for the payment of these fees and expenses, and that there are funds available for such payment in the current appropriation of the Department of Public Safety, we hold that the requirements of justice will best be served by the issuance of a writ of *mandamus* directing the respondents, the State Treasurer and Auditor of Public Accounts, to pay directly to petitioners, out of the current appropriation of the Department of Public Safety, their reasonable fees and expenses as now approved and which may be approved in the future pursuant to order of the circuit court of Sangamon County.

The county of Sangamon has intervened in this *mandamus* proceeding and requested that the respondents also be directed to pay $42,658.10 to the county as reimbursement for expenditures it has already paid for prosecution of the indigent convicts; the county seeks an additional $26,087.23 for obligations incurred but remaining unpaid as of July 29, 1966. Randolph County would ordinarily be obligated to reimburse Sangamon County for the expenses incurred in prosecution of the indigent prisoners, since the alleged crimes occurred in Randolph County and the trial

was transferred to Sangamon County. (Ill. Rev. Stat. 1965, chap. 146, par. 33.) Randolph County would then be entitled to reimbursement from the State pursuant to the Penitentiary Act. (Ill. Rev. Stat. 1965, chap. 108, par. 118.) Sangamon County states upon information and belief that Randolph County has no unencumbered funds with which to reimburse Sangamon County for the expenditures.

We perceive no reason to delay the reimbursement of Sangamon County for the unusually large expenses incurred in this prosecution, especially since funds are available in the Department of Public Safety's current contingencies appropriation. No just purpose could be served by forcing the county to incur further indebtedness or try to raise funds to finance the trial when the State must eventually pay the bills in any event. (See *People ex rel. Haynes* v. *Rosenstone,* 16 Ill.2d 513; *People ex rel. O'Meara* v. *Smith,* 374 Ill. 286.) Upon approval by the circuit court of the exact sums of expenses incurred in prosecution of these convicts, the respondents are directed to pay such amounts from the contingencies funds of the Department of Public Safety.

*Writ awarded as to petitioners and intervenor.*