464 So.2d 1281 (1985)
MARTIN COUNTY, Petitioner,
v.
Robert MAKEMSON, Esquire, and Robert G. Udell, Esquire, Respondents.
No. 83-1138.
District Court of Appeal of Florida, Fourth District.
March 6, 1985.
Michael H. Olenick, Stuart, for petitioner.
Robert Makemson of Summers & Makemson, P.A., Stuart, pro se respondent.
Robert G. Udell, Stuart, pro se respondent.
GLICKSTEIN, Judge.
This is a petition for certiorari brought by a county which originally named as respondents the trial judge[1] who awarded attorney's fees to court-appointed attorneys for the trial and appeal, respectively, of a criminal case, and the two attorneys to whom they were awarded. The trial judge, in awarding the fees, declared section 925.036, *1282 Florida Statutes (1981),[2] which authorized but limited them, to be a legislative usurpation of an exclusive judicial power, contravening Article V, Section 1 of the Florida Constitution.
The highest court of this state considered attacks upon the pre-1981 version of this statute based upon other Florida constitutional provisions, as well as the United States Constitution, and has repelled them. In Metropolitan Dade County v. Bridges, 402 So.2d 411, 414 (Fla. 1981), it said:
Neither the due process nor equal protection clauses are implicated by section 925.036. In MacKenzie v. Hillsborough County, 288 So.2d 200 (Fla. 1973), we upheld the constitutional validity of section 925.035 which established a maximum of $750 as reasonable compensation to counsel appointed to represent an indigent in a criminal case. This statute was challenged on the basis that it contravened the equal protection and due process clauses of the Constitutions of the United States and of the State of Florida. Initially, we reiterated that the right to recover attorney's fees as a part of the costs in an action did not exist at common law and that it therefore was provided for by the legislature's enactment of section 925.035. [emphasis added.]
The trial court here disregarded a major caution sign which expressly appears in Metropolitan Dade County v. Bridges. Notwithstanding that it was only a plurality decision, three of the justices agreed upon the following:
We also hold that this section [925.036] is mandatory and not directory and that the trial court erred in construing it by adding the language which would permit the trial court to award fees higher than those specified by statute where the court determined exceptional circumstances to exist.
Id. at 413. Two of the justices dissented in part, expressing their conclusion that the trial court had the power to award a fee in excess of the statutory maximum in extraordinary circumstances. A third justice agreed in essence with these latter two justices by ruling the statute to be directory, not mandatory. The remaining justice concluded that the statute was sufficiently constitutional on its face to repel the specific attacks being made upon it; however, he rejected the exceptional circumstance test being applied to individual cases and concluded it should be determined by a showing relating to lawyers or types of cases as a class.
After Metropolitan Dade County, Marion County v. DeBoisblanc, 410 So.2d 951 (Fla. 5th DCA), pet. for rev. denied, 419 So.2d 1196 (Fla. 1982), expressly rejected the contention upon which the trial court made its judgment in this case. In DeBoisblanc, the facts of which were strikingly similar to those of the present case, the fifth district said:
The issue in this case is whether or not the trial court has an inherent power to award an attorney fee irrespective of any attempted limitation by the state legislature. *1283 Section 925.036, Florida Statutes, became effective October 1, 1978. The Florida Supreme Court previously has upheld the constitutionality of a statutory fee limit, which was the predecessor of the 1978 enactment. MacKenzie v. Hillsborough County, 288 So.2d 200 (Fla. 1973). Recently, the Florida Supreme Court again has upheld the constitutionality of the fee limitation statute against an attack that it violates the equal protection and due process clauses of the Constitutions of the United States and of the State of Florida. Metropolitan Dade County v. Bridges, 402 So.2d 411 (Fla. 1981). This court, applying the MacKenzie precedent, has upheld the constitutionality of the specific statutory limitation challenged by this appeal. County of Seminole v. Waddell, 382 So.2d 357 (Fla. 5th DCA 1980).
In Waddell the trial court had not directly passed upon the validity of the statutory limitation, but had held it to be directory rather than mandatory. We reversed on authority of MacKenzie and the clear wording of the statute. See also Pinellas County v. Maas, 400 So.2d 1028 (Fla. 2d DCA 1981); Dade County v. Goldstein, 384 So.2d 183 (Fla. 3d DCA 1980). In the instant situation, the trial court, despite the precedents of MacKenzie and Waddell, purported to invalidate section 925.036 on the ground that it was "a mandatory usurpation by the legislature of constitutional power vested solely in the judiciary under Article V, Section 1 of the Florida Constitution (1968), which power is removed from the legislature by Article II, Section 3, Florida Constitution (1968)... ." This holding by the trial court is in direct conflict with Bridges and MacKenzie and, therefore, must be reversed.
Id. at 952-53.
Later, this court relied upon Metropolitan Dade County to uphold the constitutionality of the 1981 version of the statute and its mandatory nature in Broward County v. Wright, 420 So.2d 401 (Fla. 4th DCA 1982).
With such plethora of authority, the trial court was incorrect in awarding an excess fee to trial counsel by determining the statute to be unconstitutional. Moreover, it ignored another well-known caution sign spotlighted by the Metropolitan Dade County Court:
A legislative enactment is presumed valid and will not be declared unconstitutional unless it is demonstrated beyond a reasonable doubt that the statute conflicts with some designated provision of the constitution. Whenever reasonably possible and consistent with the protection of constitutional rights, courts will construe statutes in such a manner as to avoid conflict with the constitution.
402 So.2d at 413-14. Accordingly, we grant the writ and quash the award to trial counsel.
We do likewise as to the award to appellate counsel, not only because of all of the foregoing decisions but also because of the express language of the statute which provides for the award of compensation "at the conclusion of the representation." Here, the award to appellate counsel was made at the beginning of the appeal, not at the conclusion.
Notwithstanding everything we have said, we feel that an absolute fee cap works an inequity in some cases. We therefore request that the Florida Supreme Court visit the difficult questions which the present case poses, as being of great public importance. Accordingly, we certify the following with the additional thoughts recited herein:

I
We first ask whether section 925.036, Florida Statutes (1983) is unconstitutional on its face as an interference with the inherent authority of the court to enter such orders as are necessary to carry out its constitutional authority.
Although this is a question of our state constitution, and other states' holdings on this question are not dispositive, we have nevertheless considered the decisions of *1284 other states on the subject. In Smith v. State, 118 N.H. 764, 394 A.2d 834 (1978), the New Hampshire Supreme Court ruled as did the present trial judge, Justice Grimes speaking for the court:
We hold that RSA 604-A:5 and Laws 1975 ch. 505, § 1.01(04), (05) are unconstitutional insofar as they shift much of the State's obligation to the legal profession and intrude impermissibly upon an exclusive judicial function.
We are convinced that the profession must be relieved of this burden and that the burden must pass to the citizens of New Hampshire, whose duty it has been since 1966. The members of the bar, being taxpayers, will of course share in it. We also believe, however, that the bar should continue to contribute something more. To accomplish the ends of this decision, court-appointed attorneys should be paid a reasonable fee, but one somewhat less than that which an ordinary fee-paying client would pay.
It remains to be determined just what "reasonable compensation" means and who is to decide the matter in this and future cases. The obligations and responsibilities of the bar are matters of judicial concern alone. See Schware v. Bd. of Bar Examiners, 353 U.S. 232, 248, 77 S.Ct. 752 [761], 1 L.Ed.2d 796 (1957) (Frankfurter, J., concurring); N.H. Judicial Council 5th Report 20-21 (1954); State v. Rush, 46 N.J. 399, 411, 217 A.2d 441, 447 (1966); In re Lacey, 11 Cal.2d 699, 701, 81 P.2d 935, 936 (1938). Since the obligation to represent indigent defendants is an obligation springing from judicial authority, so too is the determination of reasonable compensation for court-appointed attorneys a matter for judicial determination. The power to regulate officers of the court is a power inherent in the judicial branch. Implicit in that power is the authority to fix reasonable compensation rates for court-appointed attorneys. The legislature recognized this authority in enacting RSA 604-A:4, which provides that "[e]ach court before which the counsel represented the defendant shall fix the compensation and reimbursement to be paid the counsel." Thus, we hold that it is for the trial courts of New Hampshire to fix the amount of compensation due in each case hereinafter provided. The rate awarded by the court should neither unjustly enrich nor, as the present fee schedule does, unduly impoverish the court-appointed attorney.
Id. at 838-39.
We have found no agreement by other states that such statute is facially unconstitutional as a usurpation of the judicial role. In fact, the entire current of the law has been flowing in a direction opposite to that of New Hampshire's highest court. See Bias v. State, 568 P.2d 1269, 1271 (Okla. 1977) and cases cited therein.
Finding no guidance there, we look to federal practice. Lawyers were first required for indigent defendants at trial as a matter of federal constitutional law in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), and in appeals as of right, Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). Gideon pronounced the sixth amendment right to counsel a fundamental right made obligatory upon the states by the fourteenth amendment. Justice Douglas, concurring, said:
rights protected against state invasion by the Due Process clause of the Fourteenth Amendment are not watered down versions of what the Bill of Rights guarantees.
372 U.S. at 347, 83 S.Ct. at 798, 9 L.Ed.2d at 807.
Congress responded to Gideon by the enactment in the following year of the Criminal Justice Act of 1964, Pub.L. No. 88-455, 78 Stat. 552, 553 (1964) as amended 18 U.S.L. § 3006A(d)(2) (1976).[3] The appealability, *1285 or non-appealability, of attorney fee awards under the federal statute is discussed in In re Baker, 693 F.2d 925 (9th Cir.1982), which held it was not appealable and reviewed decisions of other circuits. We note, however, that Congress has recognized the need for a fee increase for attorneys representing indigents in federal courts. Because the fees allowed to these attorneys have failed to cover even their overhead in recent years, attorneys were finding it economically infeasible to accept representation. This declining participation might have precipitated a representational crisis, but legislators have hopefully forestalled it by doubling the hourly rate permitted to such lawyers.[4]

II
If the answer to the first question is negative, could the statute be held unconstitutional as applied to exceptional circumstances or does the trial court have the inherent authority, in the alternative, to award a greater fee for trial and appeal than the statutory maximum in the extraordinary case?
In Bridges, as we have stated earlier in this opinion, the Supreme Court of Florida as it was constituted in 1981 could not agree how to handle the "exceptional circumstance." We have also recognized the admonition that trial and intermediate appellate judges should not have an itchy trigger finger anxious to shoot down statutes by aiming at their constitutionality. Some states have held such statutes to be unconstitutional, however, when applied to "exceptional circumstances"; so this state's highest court would not be alone in so doing. See Bias v. State, 568 P.2d 1269 (Okla. 1977), which was guided by the reasoning in People ex rel. Conn v. Randolph, 35 Ill.2d 24, 219 N.E.2d 337 (1966), which held that in a case wherein counsel were appointed to defend indigent prisoners charged with murder at trial 150 miles from their home county and were forced to expend personal funds for defense expenses and forego their law practices, the statute which limited reimbursement to $500 for each defendant in a capital case could not be constitutionally applied. The court said counsel "are suffering an extreme, if not ruinous, loss of practice and income." Id. at 341.
However, the underlying basis for the Illinois decision was a determination by the state's highest court of a court's inherent power:
At this time it is necessary to hold only that in the extraordinary circumstances presented in this case, the court's inherent power to appoint counsel also necessarily includes the power to enter an appropriate order ensuring that counsel do not suffer an intolerable sacrifice and burden and that the indigent defendants' right to counsel is protected.
If such judicial power did not exist, the courts probably could not proceed, and certainly could not conclude the trial of indigent defendants in cases such as this. To permit the petitioners to withdraw after nine weeks of trial would be a prodigious waste of resources already spent, and would provide no assurance that a dilemma similar to the one existing now would not likewise result after the appointment of new counsel. We hold that upon the record presented here the petitioners are clearly entitled to payment of their costs and fees forthwith, as ordered by the trial court. A permanent solution to the problem presented is an appropriate subject for the legislature. The problem having now been exposed we trust that the General Assembly will respond. See State v. Rush, 46 N.J. 399, 217 A.2d 441.
Id. at 340. A discussion of other state cases ruling upon a court's inherent power, or lack of it, as the basis for an award of attorneys' fees to counsel representing indigents is found at 59 A.L.R.3d 569, 617.
In Hall v. Cole, 412 U.S. 1, 4-5, 93 S.Ct. 1943, 1945, 1946, 36 L.Ed.2d 702, 707 *1286 (1973), the United States Supreme Court said:
Although the traditional American rule ordinarily disfavors the allowance of attorneys' fees in the absence of statutory or contractual authorization, federal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require. Indeed, the power to award such fees "is part of the original authority of the chancellor to do equity in a particular situation," Sprague v. Ticonic National Bank, 307 U.S. 161, 166, 59 S.Ct. 777, 780, 83 L.Ed. 1184 (1939), and federal courts do not hesitate to exercise this inherent equitable power whenever "overriding considerations indicate the need for such a recovery." Mills v. Electric Auto-Lite Co., 396 U.S. 375, 391-392, 90 S.Ct. 616, 625, 24 L.Ed.2d 593 (1970); see Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 718, 87 S.Ct. 1404, 1407, 18 L.Ed.2d 475 (1967). (footnotes omitted)
See also Sierra Club v. Lynn, 502 F.2d 43, 65 (5th Cir.1974), citing Hall, and the lengthy dissent by Associate Justice Hooper, in County of Fresno v. Superior Court of Fresno County, 82 Cal. App.3d 191, 198, 146 Cal. Rptr. 880, 884 (1978). Randolph was discussed in Brown v. Board of County Commissioners of Washoe County, 85 Nev. 149, 451 P.2d 708 (1969); then in Daines v. Markoff, 92 Nev. 582, 555 P.2d 490 (1976), the court discussed both Randolph and its earlier decision, saying as to the latter:
We also indicated that in extraordinary circumstances a court possessed the inherent power to award fees in excess of the statutory maximum... .
Id. at 493. The opposite view is voiced in State v. Ruiz, 269 Ark. 331, 602 S.W.2d 625 (1980).

III
If the answer to the second question is affirmative, should the trial court have awarded an attorney's fee above the statutory maximum for proceedings at the trial level, given the facts presented to it by trial counsel by his petition and testimony?
The statute expressly provides for the determination of the fee at the conclusion of the services, which occurred here. It is interesting to compare, however, the testimony in this case and that in People v. Sanders, 58 Ill.2d 196, 317 N.E.2d 552 (1974). Bearing in mind it was Illinois which initiated the "inherent power" notion in this area, that state's highest court held that "extraordinary circumstances" did not exist in Sanders. This was notwithstanding that both counsel had represented the indigent defendant for two years in defending him for the armed robbery and murder of a Chicago policeman; had conducted a three week trial; had successfully obtained a lengthy sentence rather than the death penalty; and had devoted 463 hours to the preparation and trial of the case. The trial court awarded a fee of $250 and $50 for expenses. Both appellate courts affirmed. The Nevada decisions earlier cited herein also concluded "extraordinary circumstances" did not exist.

IV
If the answer to the second question is affirmative, should the trial court have awarded an attorney's fee above the statutory maximum for proceedings at the appellate level before the services were rendered and with the facts known to it at the time of the award?
We have located no authority for the premature award of an appellate fee in this state. Randolph was awarded prior to trial, however, not at the conclusion of representation.
LETTS, J., concurs.
ANSTEAD, C.J., dissents with opinion.
ANSTEAD, Chief Judge, dissenting.
This is a case in which the defendant's life was not only at risk, but in which the death penalty was actually imposed. I believe that it has been sufficiently demonstrated *1287 in the record below that the maximum amounts designated by statute for representation in this case for trial and appellate counsel are so unreasonably insufficient as to make it impossible for the trial court to appoint competent counsel for the indigent involved. Hence, I would approve the decision of the trial court under the narrow facts presented for the same reasons I expressed in Okeechobee County v. Jennings, No. 83-1179 (Fla. 4th DCA Mar. 6, 1985), an opinion issued simultaneously herewith. The trial judge himself best expressed the dilemma he faced:
That this court is confronted with conflicting laws, one of which requires competent counsel for a defendant who has been sentenced to death and the other stating that defense counsel can be paid only $2,000 for his services. The lowest bid for these services was $4,500, which is more than twice what the Legislature has allowed. One of these laws must yield to the other. There is no doubt in the court's mind that the Legislature, if confronted with the problem, would admit that the law requiring competent counsel was paramount and superior to the law allowing a mere $2,000 fee for the dreadful responsibility involved in trying to save a man from electrocution. Therefore this court finds that F.S. 925.036 in setting rigid maximum fees without regard to the circumstances in each case is arbitrary and capricious and violates the due process clause of the United States and Florida Constitutions. See Aldana v. Holub, 381 So.2d 231 (Fla. 1980). In simpler language, the Statute is impractical and won't work.
Surely something is wrong with a system that prevents a reasonable fee from being assessed in a capital case but authorizes the state to provide counsel for private landowners in eminent domain proceedings where the fees have been as high as $800,000. State, Dept. of Natural Resources v. Gables-By-The Sea, Inc., 374 So.2d 582 (Fla. 3d DCA 1979).
NOTES
[1] We have dismissed the trial judge from this appeal after issuing an order to petitioner to show cause why the trial judge should not be dismissed as a respondent. See our opinion upon the inappropriateness of naming trial judges as respondents in petitions for certiorari directed to the orders they enter, in Arvida Corporation v. Hewitt, 416 So.2d 1264 (Fla. 4th DCA 1982).
[2] Section 925.036, Florida Statutes (1981) provides:

(1) An attorney appointed pursuant to s. 925.035 or s. 27.53 shall, at the conclusion of the representation, be compensated at an hourly rate fixed by the chief judge or senior judge of the circuit in an amount not to exceed the prevailing hourly rate for similar representation rendered in the circuit; however, such compensation shall not exceed the maximum fee limits established by this section. In addition, such attorney shall be reimbursed for expenses reasonably incurred, including the costs of transcripts authorized by the court. If the attorney is representing a defendant charged with more than one offense in the same case, the attorney shall be compensated at the rate provided for the most serious offense for which he represented the defendant. This section does not allow stacking of the fee limits established by this section.
(2) The compensation for representation shall not exceed the following:
(a) For misdemeanors and juveniles represented at the trial level: $1,000.
(b) For noncapital nonlife felonies represented at trial level: $2,500.
(c) For life felonies represented at the trial level: $3,000.
(d) For capital cases represented at the trial level: $3,500.
(e) For representation on appeal: $2,000.
[3] The statute is discussed generally in 9 A.L.R. Fed. 569. Its history can be reviewed in United States v. Bailey, 581 F.2d 984 (D.C. Cir.1978); United States v. Johnson, 549 F. Supp. 78 (D.C.D.C. 1982) and United States v. Tutino, 419 F. Supp. 246 (D.C.N.Y. 1976).
[4] Strasser, Congress Doubles Fees for Lawyers, Nat'l L.J., Oct. 22, 1984, at 3.