473 So.2d 1314 (1985)
OKEECHOBEE COUNTY, Florida, Appellant,
v.
J. Blayne JENNINGS, Robert Lee Dennis, John R. Cook, Michael D. Gelety, Appellees.
No. 83-1179.
District Court of Appeal of Florida, Fourth District.
March 6, 1985.
Mandate Withheld April 4, 1985.
Kyle S. Van Landingham, Okeechobee, for appellant.
Robert Lee Dennis, Okeechobee, pro se appellee.
J. Blayne Jennings, Grifford, pro se appellee.
John R. Cook, Okeechobee, pro se appellee.
No appearances for appellees Gelety, Kibbey, and Udell.
PER CURIAM.
We treat the appeal as a petition for certiorari, grant the writ and quash the order herein on the authority of Martin County v. Makemson, 464 So.2d 1281 (Fla. 4th DCA 1985); and we certify to the Supreme Court of Florida the same question as we did in that case as being of great public importance.
LETTS and GLICKSTEIN, JJ., concur.
ANSTEAD, C.J., concurs specially with opinion.
ANSTEAD, Chief Judge, concurring specially.
This is an appeal from an order of the trial court holding that section 925.036, *1315 Florida Statutes (1981), which limits the fees payable to private attorneys specially appointed to represent indigents in criminal cases, is unconstitutional as applied to the facts of this case. I recognize that this decision is controlled by our opinion in Makemson. However, were I free to do so I would approve the trial court's action.
In the court below the lawyers who originally accepted appointment as special public defenders came to the court in the midst of the proceedings and asked that the statutory cap on fees be relaxed. In essence, the lawyers contended that because of the complexity of the cases and the necessity to devote inordinate amounts of time to prepare and try the cases, to continue with representation would result in financial ruination to them. They asserted that they were trapped between the choices of continuing and suffering the disastrous financial consequences or withdrawing and leaving the defendants without counsel. After taking evidence, including expert testimony that lawyers were not generally available in the area to take such complex cases for the statutory fees allowed, the trial court entered an order voiding the statutory cap for the purpose of assessing fees in these cases. The court set out its reasons in a written order:
This Court bases its decision upon the following findings:
Cases of this type, that is trafficking controlled substance and conspiracy to trafficking controlled substance are characterized as some of the most complex criminal defense cases. This particular case has over one hundred and thirty state's witnesses listed to testify or may possibly testify. There are some four thousand pages of the State's evidence that may be introduced. There are eight defendants currently in the case. Most of the witnesses should be deposed by each defense counsel or at least interviewed by them. The case involves the use of interception of oral communication by use of body bugs, informers, some investigation by Federal, both Federal and State agencies. The defense of entrapment has been asserted. Currently it is estimated that over six weeks at approximately four days a week and four hours per day will be required to select a jury in the case. To this point, there have been four weeks of evening motion sessions at three hours per day, two to three times a week. (As of February 25, 1983). It is estimated that the trial will take between four to eight weeks, once the evidence starts. That would be approximately four days a week six hours in court time per day. Discovery and pre-trial time has taken between forty and one hundred sixty five hours per lawyer. As per defense lawyer. It is extremely unlikely that any competent lawyer would accept representing a defendant in this case as special public defender for a fee of twenty five hundred dollars or less. If a lawyer knows that the fee in the case would be limited to twenty five hundred dollars or less, and that lawyer is not independently wealthy, that competent counsel could not be found who would accept representation as special public defender in this case either from the outset of the case or from jury selection forward. A reasonable expected fee in this case, for a private lawyer, would be an amount between thirty and forty thousand dollars, exclusive of out of court costs or out of pocket costs.
In Metropolitan Dade County v. Bridges, 402 So.2d 411 (Fla. 1981), the facial validity of section 925.036 was upheld by a plurality opinion in which three justices rejected attacks of unconstitutionality predicated on due process, equal protection and right to counsel concerns.[1] The Bridges plurality opinion stated:
We further hold that Ross has failed to demonstrate that an indigent defendant's right to counsel has been impinged upon in any way by this statute. Indigent defendants are not denied counsel by section 925.036. At common law, it was the professional obligation of the lawyer to *1316 accept an assignment to represent an indigent party when directed to do so by the court, but there was no right to compensation from the government or any other source for representation of the poor. In the Interest of D.B., 385 So.2d 83 (Fla. 1980). Since Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), which established a fundamental constitutional right to counsel in various classes of cases, questions have arisen as to whether lawyers should be relieved of their historical duty to represent the poor. Questions have even arisen as to whether requiring a member of the Bar to represent an indigent with no compensation or minimum compensation amounts to a taking of property without due process of law. We have held that lawyers should not be completely relieved of their responsibility to represent the poor although we have recognized the concomitant obligation of the government to provide legal representation when such is constitutionally required, and we have held that requiring a lawyer to perform his historical professional responsibility to represent the poor does not constitute an unfair "taking" of private property in violation of due process. In the Interest of D.B.

Unless it is demonstrated that the maximum amounts designated for representation in criminal cases by section 925.036 are so unreasonably insufficient as to make it impossible for the courts to appoint competent counsel to represent indigent defendants, we cannot say that section 925.036 violates the sixth amendment right to counsel. In the present case, the defendant represented by Ross was not denied his sixth amendment right to representation by section 925.036, nor is it contended that he was denied such right.
402 So.2d at 414-15. A fourth justice concurred in the result but reserved the right to reconsider the right to counsel issue "should it be demonstrated that the monetary limitation placed by the legislature on the compensation paid to court appointed attorneys representing indigent criminal defendants be so unreasonable as to make it impossible to secure effective counsel to those individuals." Id. at 415 (Sundberg, Chief Justice, concurring specially). Three justices dissented and would have approved a result permitting the assessment of fees above the statutory limits in cases involving such extraordinary circumstances that the amount of time required to be spent by the appointed lawyer on the case would render the fee allowed under the statute a meaningless token.[2]
There is a division of authority in other jurisdictions as to the validity of similar statutory limitations on fees. Some states, under circumstances similar to those involved herein, have struck down statutory caps on attorneys' fees. In People ex rel. Conn v. Randolph, 35 Ill.2d 24, 219 N.E.2d 337 (1966), the court held that fee limits could be unconstitutional in extraordinary circumstances. In such cases, the courts have the inherent power to abrogate such limits. "[T]he statute cannot constitutionally be applied where it appears, as here, that appointed counsel cannot continue to serve because they are suffering an extreme, if not ruinous, loss of practice and income and must expend large out-of-pocket sums in the course of trial." Id. at 341. Randolph was adopted in Bias v. State, 568 P.2d 1269 (Okla. 1977); Daines v. Markoff, 92 Nev. 582, 555 P.2d 490 (1976); and Application of Armani, 83 Misc.2d 252, 371 N.Y.S.2d 563 (1975).
In Smith v. State, 118 N.H. 764, 394 A.2d 834 (1978), the New Hampshire Supreme Court held that the Legislature violated the separation of powers doctrine by establishing a fee limit because the determination of fees is solely a judicial responsibility.
The obligations and responsibilities of the bar are matters of judicial concern alone. See Schware v. Bd. of Bar Examiners, 353 U.S. 232, 248, 77 S.Ct. 752 [761], 1 L.Ed.2d 796 (1957) (Frankfurter, *1317 J., concurring); N.H. Judicial Council 5th Report 20-21 (1954); State v. Rush, 46 N.J. 399, 411, 217 A.2d 441, 447 (1966); In re Lacey, 11 Cal.2d 699, 701, 81 P.2d 935, 936 (1938). Since the obligation to represent indigent defendants is an an obligation springing from judicial authority, so too is the determination of reasonable compensation for court-appointed attorneys a matter for judicial determination. The power to regulate officers of the court is a power inherent in the judicial branch. Implicit in that power is the authority to fix reasonable compensation rates for court-appointed attorneys.
Id. at 838-39. Subsequently, in State v. Robinson, 123 N.H. 665, 465 A.2d 1214 (1983), the court amended a supreme court rule, formulated in response to Smith, to include an exception for unusual circumstances. The Federal statute also provides for an abrogation of fee limits for extraordinary circumstances. 18 U.S.C. § 3006 A(d)(3). Georgia provides for such a waiver in these circumstances by statute and court rule. Dickens v. State, 147 Ga. App. 25, 248 S.E.2d 36 (1978). Massachusetts and Montana have similar court rules. Edgerly v. Commonwealth, 379 Mass. 183, 396 N.E.2d 453 (1979); State v. Allies, 182 Mont. 323, 597 P.2d 64 (1979). Michigan, Iowa, and South Dakota statutes allow the trial judge to award a reasonable fee without limit. Matter of Burgess, 69 Mich. App. 689, 245 N.W.2d 348 (1976); Hulse v. Wifvat, 306 N.W.2d 707 (Iowa 1981); Johnson v. City Commission of the City of Aberdeen, 272 N.W.2d 97 (S.D. 1978).
In states that have no statute or court rule, the traditional rule has been that attorneys must represent indigent criminal defendants without compensation. Sparks v. Parker, 368 So.2d 528 (Ala. 1979). In State v. Ruiz, 269 Ark. 331, 602 S.W.2d 625 (1980), the court held that a $350 statutory maximum fee for appointed counsel was constitutional because each attorney had a duty to provide his services without compensation. This result was reached by similar reasoning in Keene v. Jackson County, 3 Or. App. 551, 474 P.2d 777 (1970). Some state courts however, have refused to follow this rule. See State ex rel. Partain v. Oakley, 159 W. Va. 805, 227 S.E.2d 314 (1976); and State v. Rush, 46 N.J. 399, 217 A.2d 441 (1966). Thus it appears that the states are in disagreement on whether attorneys need be paid at all for their representation of indigent defendants, and, if so, whether a fee limit may be abrogated under any circumstances.
I believe that it has been sufficiently demonstrated in the record below that the maximum amounts designated by statute for representation in these cases are so unreasonably insufficient as to make it impossible for the trial court to appoint competent counsel for the indigents involved. See Bridges. Hence, I believe this case meets the criteria for the exception set out in Bridges for avoiding the statutory cap and I would approve the decision of the trial court under the narrow facts presented. While I am in complete concurrence with the supreme court's observations in Bridges as to the obligation of lawyers to represent the indigent, I am also cognizant of the great variations in complexity, and attendant time demands, involved in criminal cases to which lawyers may be assigned. In my view the present statute's failure to recognize these distinctions and to deal with them in a realistic and reasonable manner, as exemplified in the case at hand, constitutes a major flaw in the overall scheme.
The stakes, of course, in the form of fines, imprisonment, and, in some cases even death, are at their highest in criminal proceedings and the lawyer's responsibility correspondingly greater. Under our adversary system of justice the role of the defendant's advocate is critical in assuring a just result in each case to the maximum extent possible under the law. Under the adversary system, with the exception of certain fundamental responsibilities placed on the prosecutor and the court, we rely on the defendant, acting through his counsel, to discover and present all relevant defensive and mitigating circumstances to the adjudicators.[3]
*1318 The rights of the lawyer, too, must be figured in the equation at some point. It would be unrealistic not to recognize that there must be limits to the amount of time a lawyer can be forced to devote to a case with little or no compensation. This creates a problem that is almost impossible to detect because of the variety of ways a lawyer may defend a case. In most cases lawyers do not serve involuntarily but rather volunteer either by consenting to an "appointment" in a particular case or by making it known that they will accept appointments in certain types of cases if offered. We have not yet faced the situation in Florida where the lawyer is forced to serve over his objection and the client is thus faced with being represented by a lawyer who doesn't want to serve him. It is also important to keep in mind that there is an entitlement to competent counsel, not just anyone on the bar rolls. In the legal profession, as in all others, the "more" competent a lawyer is the greater the remuneration he usually receives for his services.
Unlike medicine or engineering or plumbing, the art or science of lawyering relies a great deal more on individual personality and motivation for success. A lawyer who "doesn't have his heart in it" can lose a jury trial in a hurry. In most instances, a lawyer's professional ethics and personal concern for justice may motivate him to devote whatever time and effort is necessary in the individual case. Indeed, that is what keeps the present system afloat. But it would be foolish to ignore the very real possibility that a lawyer may not be capable of properly balancing the obligation to expend the proper amount of time in an appointed criminal matter where the fees involved are nominal, with his personal concerns to earn a decent living by devoting his time to matters wherein he will be reasonably compensated. The indigent client, of course, will be the one to suffer the consequences if the balancing job is not tilted in his favor. In this case the trial court has concluded that just such a dilemma existed and it acted to relieve the dilemma by allowing a greater fee.
Government provided public defenders, of course, ordinarily represent indigents. The problem arises, only when, as here, conflicts between codefendants require other counsel to be appointed. One solution to this problem would be to appoint public defenders from neighboring circuits, as opposed to private lawyers, and have those public defenders serve on special assignment for the time necessary. This is already the practice when local prosecutors are unable to act in a particular case because of conflict or other reasons, and another prosecutor, usually one from another circuit, is appointed. Of course, budgetary limitations and travel expense may limit the efficacy of this solution. Another possible solution may be to base the statutory fees on an hourly rate rather than a cap for the total fee. Such a scheme could keep the hourly rate modest but permit lawyers to receive a fee based on the necessarily *1319 varying amounts of time needed to defend cases of varying degrees of difficulty; the major flaw not covered under the present scheme.
I recognize that there are no easy answers. But I think we can do better, and certainly should try.
BY ORDER OF THE COURT:
ORDERED that the Motion filed March 13, 1985 by Appellee, Richard Lee Dennis, to withhold the issuance of the Mandate pending Supreme Court review is granted, conditioned upon said appellee, or any other party, initiating proceedings in the Supreme Court of Florida.
ORDERED that the March 18, 1985 Stipulated Motion to remove Richard D. Kibbey, Esquire, as a party appellee to these proceedings is granted.
ORDERED that the March 28, 1985 Motion to remove Robert G. Udell, Esquire, as a party appellee to these proceedings is hereby granted.
NOTES
[1] This court has, of course, followed Bridges and limited fees to the statutory maximums. Broward County v. Wright, 420 So.2d 401 (Fla. 4th DCA 1982); Soven v. Palm Beach County, 422 So.2d 91 (Fla. 4th DCA 1982).
[2] Two of the justices, Sundberg and England, who concurred in the majority decision in Bridges are no longer on the Supreme Court.
[3] That we are no less committed to providing an indigent defendant these fundamental safeguards was recently, and forcefully, reaffirmed by the United States Supreme Court in a decision upholding an indigent defendant's right to the services of a state-provided psychiatrist where insanity is in issue:

This Court has long recognized that when a state brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense. This elementary principle, grounded in significant part on the 14th Amendment's due process guarantee of fundamental fairness, derives from the belief that justice cannot be equal where, simply as a result of his poverty, a defendant is denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake.
We recognized long ago that mere access to the courthouse doors does not by itself assure a proper functioning of the adversary process, and that a criminal trial is fundamentally unfair if the state proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an effective defense. To implement this principle, we have focused on identifying the "basic tools of an adequate defense or appeal," and we have required that such tools be provided to those defendants who cannot afford to pay for them.
Ake v. Oklahoma, ___ U.S. ___, 105 S.Ct. 1087, 84 L.Ed.2d 53, opinion issued February 26, 1985.