NOTICE
Decision filed 02/25/21 The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2021 IL App (5th) 190190

NO. 5-19-0190

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff, | ) | Pulaski County. |
| | ) | |
| v. | ) | No. 98-CF-91 |
| | ) | |
| PHILLIP SHARP, | ) | |
| | ) | |
| Defendant-Appellee | ) | Honorable |
| | ) | William J. Thurston, |
| (The Department of Corrections, Intervenor-Appellant). | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court, with opinion.
Presiding Justice Boie and Justice Vaughan[*] concurred in the judgment and opinion.

**OPINION**

¶ 1    This appeal arises from the Pulaski County circuit court's order requiring the Illinois Department of Corrections (DOC) to pay Brian Trambley attorney fees in the amount of $5661.92 in compensation for his representation of Phillip Sharp in a proceeding under the Sexually Dangerous Persons Act (Act) (725 ILCS 205/0.01 *et seq.* (West 2018)). The appellant, the DOC, filed a petition to vacate the trial court's order that it pay Trambley's attorney fees, arguing that the court erred in that Pulaski County, where the relevant proceedings occurred, was the party

_____

[*]Justice Overstreet was originally assigned to participate in this case. Justice Vaughan, who has been substituted on the panel subsequent to Justice Overstreet's appointment to the Illinois Supreme Court, has read the briefs.

1

liable for costs of representation of Sharp under the Act. See *id.* § 5. The DOC's argument relies on an amendment to section 5, which became effective July 15, 2013, wherein the following language was added: "The cost of representation by counsel for an indigent respondent shall be paid by the county in which the proceeding is brought." *Id.* Under the plain language of the Act, the DOC argues that the county, *i.e.*, Pulaski, is financially responsible for Trambley's attorney fees. For the reasons that follow, we reverse the order of the circuit court and remand for further proceedings consistent with this opinion.

¶ 2                                    I. BACKGROUND

¶ 3     On September 7, 2001, Sharp was charged by amended information with four counts of aggravated criminal sexual assault. On October 30, 2002, the State filed a petition to proceed under the Act (725 ILCS 205/0.01 *et seq.* (West 2002)). On August 31, 2005, a jury trial was held on the matter, and the jury returned a verdict finding Sharp to be a sexually dangerous person. The trial court entered judgment on the verdict, and Sharp was committed to the custody of the DOC. On September 12, 2005, Sharp filed a notice of appeal in accordance with Illinois Supreme Court Rule 606 (eff. Dec. 1, 1999). On June 21, 2006, this court entered a summary order affirming the court's judgment. *In re Detention of Sharp*, No. 5-05-0525 (2006) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 4     Following his commitment to the custody of the DOC, on August 6, 2007, pursuant to section 9(a) of the Act (725 ILCS 205/9(a) (West 2006)), Sharp filed a *pro se* application showing recovery requesting that he be discharged from the commitment order. On May 21, 2010, Sharp again filed an application for discharge or conditional release but later moved for leave to withdraw the application, which the trial court granted. On July 5, 2013, Sharp filed another application for

discharge or conditional release. The State filed a motion to dismiss the application, which the court granted.

¶ 5    On October 9, 2014, Sharp again filed a motion for discharge or conditional release. A jury trial was held, and on April 25, 2017, the jury entered a verdict finding by clear and convincing evidence that Sharp was a sexually dangerous person and should remain committed to the custody of the DOC. The trial court entered judgment on the verdict. Sharp filed a *pro se* motion for leave to appeal.

¶ 6    On June 14, 2017, Trambley filed an entry of appearance as Sharp's court-appointed counsel to represent him in proceedings under the Act. The majority of Trambley's representation was related to the filing of a motion for new trial on the 2014 application for discharge or conditional release. On September 21, 2018, Trambley filed a motion to withdraw as counsel. On November 17, 2018, Trambley filed a motion for order approving attorney fees. Attached to the motion was a verified statement of services that Trambley provided to Sharp as to his legal representation from June 2017 through September 2018. Based on previous orders of the trial court, Trambley requested that the court order the DOC to pay his attorney fees in the amount of $5661.92. On January 3, 2019, the court entered a written order granting the motion and mandating that the DOC pay Trambley $5661.92 for the legal services he provided to Sharp.

¶ 7    On February 11, 2019, the DOC filed a petition to vacate the trial court's January 3, 2019, order arguing that the order was not authorized under the Act. The DOC argued that the Act pertained to proceedings regarding the confinement of an individual declared to be a sexually dangerous person. Section 5, which was amended in 2013, instructed that "[t]he cost of representation by counsel for an indigent respondent shall be paid by the county in which the

3

proceeding is brought." 725 ILCS 205/5 (West 2014). Therefore, it argued that Pulaski County, and not the DOC, was responsible for the cost of Sharp's legal representation.

¶ 8     On April 11, 2019, following a hearing, the trial court entered a written order denying the DOC's petition to vacate. In reaching its decision, the court stated the following:

"[T]he court relies on statutory authority and case law, including, but not limited to the following: *People v. Downs*, 371 Ill. App. 3d 1187 (5th Dist. 2007); *People v. Carter*, 392 Ill. App. 3d 520 (2nd Dist. 2009); *People v. Wilcoxen*, 358 Ill. App. 3d 1076 (3rd Dist. 2005); *People v. Randolph*, 35 Ill. 2d 24 (1966); 725 ILCS 205/0.01 *et seq.* [(West 2018)] (The Sexually Dangerous Persons Act); [The Probate Act of 1975 (Probate Act)] 755 ILCS 5/11a-17 [(West 2018)], Duties of personal guardian (Probate Act); 20[ ]ILCS 4026/19 [(West 2018)], (Sex Offender Management Board Fund (and amendments thereto)); Public Act 098-0088 (including the Synopsis as Introduced, legislative history, and transcripts of short floor debate on May 2, 2013, and May 7, 2013.

*** The court finds that the [DOC], as guardian, is responsible for [the] indigent respondent, [Sharp]'s attorneys fees, payable to attorney Brian Trambley, in the amount of $5,661.92. To rule differently, the court would have to interpret all relevant authority in an inconsistent manner."

The court reasoned that reading the amended language in section 5 of the Act in conjunction with its remaining provisions, the Probate Act, and the aforementioned caselaw would make any alternative ruling untenable. The court further reasoned that:

"The 2013 amendment to the [Act] added the relevant language in section 205/5. Section 205/5 is the pre-adjudication portion of the statute. The section confers the right of a jury trial to the respondent. In the subsequent statutory provisions (725 ILCS 205/8), the

4

directive is made that, if the respondent is found to be a sexually dangerous person, the Director of Corrections shall be appointed guardian."

It was therefore the court's interpretation that, at times prior to the finding that an indigent respondent is a sexually dangerous person, the county shall bear costs of legal representation. However, "at a specifically delineated time, *i.e.*[,] post-adjudication, when the [DOC] becomes guardian, the [DOC] is responsible for bearing those costs." The court noted that the General Assembly specifically included the amended language in section 5 of the Act, the pre-adjudication phase. The General Assembly did not, however, choose to insert similar language into the post-adjudicatory sections of the Act.

¶ 9    Additionally, the General Assembly did not amend the Probate Act of 1975 (Probate Act) (755 ILCS 5/1-1 *et seq.* (West 2018)) to create an exception to the duties of a guardian to be read in conjunction with the amended language in section 5 of the Act. Specifically, the trial court relied on the statutory language of the Probate Act where a guardian "shall procure for them and shall make provision for their support, care, comfort, health, education and maintenance, and *professional services* as are appropriate." (Emphasis added.) *Id.* § 11a-17(a). The court noted that the plain language of the Probate Act did not make an exception for the DOC when serving as a guardian of a sexually dangerous person. Lastly, the court cited *People v. Carter*, 392 Ill. App. 3d 520, 526 (2009),[1] which, according to the court, "created an avenue of reimbursement to the [DOC] for services rendered to sexually dangerous persons who are indigent." In accordance with its reasoning, the court found that the DOC, as Sharp's guardian, was responsible for the attorney fees owed to Trambley for the cost of the representation of Sharp in the amount of $5661.92. The DOC appeals.

---

[1]We note that the decision in that case was issued in 2009, prior to the 2013 amendment of the Act.

¶ 10                                    II. ANALYSIS

¶ 11    The issue on appeal is whether the trial court erred in ordering the DOC to pay the costs of Sharp's representation for proceedings held pursuant to the Act but after he had been adjudicated a sexually dangerous person. The question this court must address is whether the amendment to section 5 of the Act requires the county in which all proceedings under any provision of the Act pay for the costs of representation of an indigent individual, including post-adjudicatory proceedings.

¶ 12    This appeal involves a question of statutory interpretation, which this court reviews *de novo*. *People v. Brooks*, 221 Ill. 2d 381, 388 (2006) (citing *People v. Donoho*, 204 Ill. 2d 159, 172 (2003)). A court's primary objective in interpreting a statute is to give effect to the intent of the legislature. *People v. Phelps*, 211 Ill. 2d 1, 15 (2004). The most reliable indicator of the legislature's intent is the language of the statute. *Id.* The language of the statute must be accorded its plain and ordinary meaning. *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 6 (2009) (citing *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 26 (2005)). Where the language is clear and unambiguous, it will be applied as written, without resorting to extrinsic aids of statutory construction. *Id.* at 6-7 (citing *In re R.L.S.*, 218 Ill. 2d 428, 433 (2006)).

¶ 13    Section 5 of the Act reads as follows:

"The respondent in any proceedings under this Act shall have the right to demand a trial by jury and to be represented by counsel. The cost of representation by counsel for an indigent respondent shall be paid by the county in which the proceeding is brought. At the hearing on the petition it shall be competent to introduce evidence of the commission by the respondent of any number of crimes together with whatever punishments, if any, were inflicted." 725 ILCS 205/5 (West 2018).

6

The language, "The cost of representation by counsel for an indigent respondent shall be paid by the county in which the proceeding is brought," was an amendment to the original language and became effective on July 15, 2013.

¶ 14    The motion for discharge or conditional release filed by Sharp on October 9, 2014, was brought under section 9 of the Act, which sets out post-adjudicatory proceedings and does not address costs of representation. See 725 ILCS 205/9 (West 2014). Prior to the 2013 amendment, section 5 of the Act was also silent as to responsibility for costs of representation of an indigent respondent.

¶ 15    Here, the DOC argues that the 2013 amendment to section 5 is unambiguous and establishes that the General Assembly intended for the county to pay for the cost of representation for an indigent respondent in all proceedings under the Act, regardless of whether they are pre- or post-adjudication. Alternatively, should this court find the language ambiguous, the DOC argues that the floor debates of the General Assembly indicate that there was no intent to distinguish between pre- and post-adjudication proceedings; furthermore, the Illinois Supreme Court has previously held that the General Assembly intended for the provisions of section 5 be applied to section 9 of the Act. We agree with the DOC that the statute is unambiguous and that the plain language of the statute requires that the county in which a proceeding under the Act is held be responsible for the costs of representation of an indigent respondent.

¶ 16    At the outset, we note that the caselaw cited in both the trial court's written order and in the appellee's brief predates the effective date of the amendment to section 5, and those cases are therefore not instructive to this court in interpreting the statute.

¶ 17    Looking to the plain language of the statute, we must determine whether the provision in section 5 regarding financial responsibility for the cost of representation applies to proceedings

7

brought under section 9 of the Act—specifically, proceedings that are held in accordance with the Act after respondent has been adjudicated a sexually dangerous person.

¶ 18     Section 5 unambiguously requires the county in which a proceeding under the Act is held be responsible for the cost of representation of an indigent respondent. The statute does not say that the requirement applies only to proceedings under that section. It also does not make any distinction between pre-adjudication and post-adjudication proceedings brought under the Act. The language is clear, and the change in plurality between the first sentence and the second sentence cannot be considered a "change in language," as argued by the appellee, because that would violate section 1.03 of the Statute on Statutes where "[w]ords importing the singular number may extend and be applied to several persons or things, and words importing the plural number may include the singular." 5 ILCS 70/1.03 (West 2018).

¶ 19     Reading the Act in conjunction with the Probate Act does not affect our ruling as the provisions of the Act apply only to proceedings established within its provisions. A fundamental rule of statutory construction is that " 'where there exists a general statutory provision and a specific statutory provision, either in the same or in another act, both relating to the same subject, the specific provision controls and should be applied.' " *Mattis v. State Universities Retirement System*, 212 Ill. 2d 58, 77 (2004) (quoting *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 459 (2002)). The section of the Probate Act cited by both the trial court and the appellee establishes duties of a personal guardian of a ward. 755 ILCS 5/11a-17 (West 2018). Under the Probate Act, a "ward" is defined as including "a minor or a person with a disability." *Id.* § 1-2.17. The Probate Act applies to all wards encompassed within its definition, not only to persons adjudicated to be sexually dangerous under the Act. However, the provisions of section 5 do not apply to any proceedings brought outside the statutory scope of the Act. Therefore, because the provisions of

8

the Act are more specific and the Probate Act applies more generally, we find the Act's requirements controlling.

¶ 20    Lastly, we note that though there is no caselaw on the particular issue before this court, we do find instructive our supreme court's application of the pre-amendment version of section 5 of the Act to section 9. See *People v. Olmstead*, 32 Ill. 2d 306, 312-13 (1965) (finding that the right to counsel and trial by jury prescribed in section 5 of the Act applied to any proceeding brought under the Act; specifically, proceedings resulting from the filing of an application for discharge under section 9); see also *People v. Trainor*, 196 Ill. 2d 318, 331 (2001).

¶ 21    Because we find no ambiguity in the plain language of the Act, we are required to reverse the trial court where the statute holds the county in which a proceeding is held be responsible for the costs of legal representation of an indigent respondent. We must therefore find that the cost of the Sharp's representation is the responsibility of Pulaski County, not the DOC. However, we do note that though this court is bound to enforce the plain language of the statute, the legislature has the power to amend the language so to relieve some of the financial burden for post-adjudicatory proceedings that the language of the Act creates for small or rural counties and balance the cost of representation for indigent defendants. Especially where the indigent defendant continues to be denied release, despite filing multiple petitions for release under the Act.

¶ 22                                III. CONCLUSION

¶ 23    Based on the foregoing, we reverse the order of the circuit court of Pulaski County finding the DOC responsible for the costs of representation of Sharp in a proceeding brought under the Act and remand for further proceedings consistent with this opinion.


¶ 24    Reversed and remanded.

**No. 5-19-0190**

| | |
|---|---|
| **Cite as:** | *People v. Sharp*, 2021 IL App (5th) 190190 |
| **Decision Under Review:** | Appeal from the Circuit Court of Pulaski County, No. 98-CF-91; the Hon. William J. Thurston, Judge, presiding. |
| **Attorneys for Appellant:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Kaitlyn N. Chenevert, Assistant Attorney General, of counsel), for intervenor-appellant. |
| **Attorneys for Appellee:** | Paige Clark Strawn, of Law Office of Paige Clark Strawn, P.C., of Mt. Vernon, for appellee. |